245 So.2d 544 (1971)
William NICHOLS et al., Plaintiffs-Appellants,
v.
GREEN ACRES REST HOME, INC., et al., Defendants-Appellees.
No. 3325.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1971.
*545 Collings & Collings by Robert L. Collings, Lake Charles, for plaintiffs-appellants.
Stockwell, St. Dizier, Sievert & Viccellio by Robert W. Clements, Lake Charles, for defendants-appellees.
Before SAVOY, MILLER, and DOMENGEAUX, JJ.
SAVOY, Judge.
This is an action for wrongful death brought by William Nichols and Mrs. Florence Cole, surviving children of James E. Nichols, who died on September 15, 1967, while a resident of Green Acres Rest Home. The jury, after hearing the evidence, held for the defendants, and plaintiffs have appealed from that verdict.
James E. Nichols was 81 years of age at the time of his death, and had been a resident of Green Acres Rest Home for approximately six months. Even though he was a man of advanced age, he enjoyed reasonably good health. Even though he had poor eyesight, he was very active for his age. He walked with the aid of a cane because of a stiff left leg which resulted from an accident which occurred during his 20's. He enjoyed walking around the rest home and the surrounding grounds. On September 15th, James E. Nichols was found near the bank of the Calcasieu River, the northern boundary of the rest home. He had fallen in a wet grassy area near the river bank, and had collapsed there. Efforts to revive him were unsuccessful.
Appellants contend that the jury was in error for not finding defendant nursing home negligent, and that decedent's death was caused by that negligence.
A nursing home is not the insurer of the safety of its patients. The nursing home does have a duty to provide a reasonable standard of care, taking into consideration the patient's mental and physical condition. This duty owed does not include having a nurse or attendant following the patient around at all times. LeBlanc v. Midland National Insurance Company, 219 So.2d 251 (La.App. 3 Cir. 1969); and Tait v. Western World Insurance Company, 220 So.2d 226 (La.App. 3 Cir. 1969).
It is clearly shown that the nursing home was in full compliance with all the requirements for the minimum standards for nursing homes by the State of Louisiana. On the date of the accident, the rest home had 64 patients, with a total of 19 employees providing 150 hours of nursing care for each 24-hour period. According to standards required, only 128 hours of nursing care was actually required; but in this *546 instance, the Green Acres Rest Home was giving more than was required. The deceased was seen in his room at about 2:45 and at about 2:55 P.M. The latter time was approximately five minutes before the shift changed at 3:00 P.M. He was discovered missing shortly after 3:00 P.M. by the attendant who came on at 3:00 P.M., and was immediately reported missing. The deceased had apparently left his room and gone for a walk. He was found shortly after 3:00 P.M., and efforts were made for at least twenty minutes to revive him.
Regulations prohibited locking of exits because of the necessity of fire escape routes, and the rest home had no authority to physically restrain patients. Patients could only be restrained by doctor's orders. The attending physician testified that he had absolutely no reason to advise the rest home to limit the deceased's activity in any way; and there was no reason, as far as he was concerned, why the rest home should prevent the deceased from taking his strolls around the premises. In fact, one of the reasons Mrs. Cole placed her father in this particular rest home was because she thought that Mr. Nichols would enjoy the surroundings. Mr. Nichols had worked in the woods all his life and enjoyed the outdoors, and she thought Green Acres would be a good place for him. She admitted that she had never requested the nursing home to restrain her father's activities in any way. Mrs. Cole had worked at the rest home until approximately two weeks before the death of Mr. Nichols and had ample opportunity to observe him. She explained that it was part of her father's daily routine to sit on the porch and smoke his pipe, then to walk around the premises. She acknowledged that at that time, when she was working there, the deceased had full run of the premises, and she had no objections to this at all.
One of the allegations of negligence by plaintiffs was that the defendant nursing home had permitted the deceased "to drown in the Calcasieu River". Indeed, the coroner's report or death certificate did cite drowning as the cause of death. The body was found face down in a puddle of water some twenty-five to forty-five feet from the river. However, there was ample evidence to support the jury's conclusion that decedent did not die from drowning.
The death certificate was required before preparations for a funeral could be made. Dr. White testified that he immediately called in Dr. Stevens to do the autopsy, and he personally never saw the deceased's body at any time. The autopsy was done in two stages, a preliminary gross autopsy, and a final microscopic autopsy. Dr. Stevens' preliminary diagnosis actually did include as a secondary cause of death the aspiration of water. It was on the basis of this preliminary diagnosis that Dr. White completed the certificate after having a telephone conversation with Dr. Stevens. Of course, at that time, the microscopic examination had not even begun.
Dr. Stevens' primary diagnosis, after conclusion of the autopsy, was that Mr. Nichols died of advanced arteriosclerosis; arteriosclerosis with severe cerebral atrophy. There was evidence of a passive chronic congestion of liver which accompanies a degenerative vascular disease heart failure, and also advanced vascular changes in the kidneys which accompanies arteriosclerosis. Dr. Stevens did testify that it was possible for the death to have resulted from an obstruction of an airway, but this was only a mere possibility. In effect, Dr. Stevens concluded that the deceased simply died of old age.
It was not an error for the trial court to exclude testimony of a prior drowning in the Calcasieu River of a patient at the rest home. While such evidence has been admitted where the prior accident showed knowledge on the part of the defendant of a latent defect or condition, such is not the case here. The river was not a hidden or concealed danger. In fact, it may not have been a danger at all. The jury knew of the existence of the river *547 adjacent to the property, and already was in a position to evaluate its importance.
Also, appellants argue that the court erred in failing to admit evidence that the rest home constructed a fence along the river some time after the accident. Clearly, this type of evidence is inadmissible. Givens v. Desoto Building Company, 156 La. 377, 100 So. 534 (1924).
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are to be assessed against plaintiffs-appellants.
Affirmed.