499 So.2d 233 (1986)
Nona L. CAPPO, Plaintiff-Appellant,
v.
ALLIANCE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 18148-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
*234 Bruscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiff-appellant.
Davenport, Files & Kelly by Lavalle B. Salomon, Monroe, for defendants-appellees.
Before HALL, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Plaintiff, a woman of 81 years of age, appeals a trial court judgment rejecting her demands against the Ouachita Council on Aging, Inc. and its insurer. We affirm.
Plaintiff's suit stemmed from injuries received September 28, 1983 on the premises of the Ouachita Council on Aging as a result of contact with chairs which had been placed as a barrier in front of a partially dismantled wall. The plaintiff alleged she sustained a contusion of her left leg below the knee which she contends continues to cause pain and ambulatory problems.
The Ouachita Council on Aging provides a place for senior citizens of lower income to socialize, receive meals and enjoy structured activities. Plaintiff was a participant in the day care service for about a year beginning in the summer of 1982.
In September of 1983, the Council had obtained new quarters which were being readied for relocation of the senior day care program. In order to accomplish the relocation, it was necessary for paneling to be removed from the walls of the present location as needed at the new building. After hours, the paneling would be removed by workers and taken to the new facility. This action exposed the support studs and made adjoining rooms visible from the main activity area.
In the area where the paneling had been removed, folded metal chairs had been stacked one on top of the other on the floor to a height of some two feet as a barricade to prevent patrons from crossing through the area of open studs. Also it was the practice of the defendant Council to stack spare chairs on dollies for storage. Certain of these had been relocated to that area, also in an effort to blockade the area of construction. There were no ropes or signs erected and evidently there was some space between the stacks of chairs.
Mrs. Cappo testified that the accident occurred as she was attempting to "get by" two rows of chairs and some of those chairs fell on her leg. She testified specifically that the chairs fell on her without any initial contact with the chairs by her, and that she attempted to "hold them back" without success. She further testified that she was not attempting to pass between or through the chairs in order to take a shortcut into a nearby room through the open studs.
*235 In contrast, Mrs. Sarah Berry, a volunteer worker for the Council, testified that somewhat earlier she had prevented Mrs. Cappo from crossing into the ceramics room through the open studs. Mrs. Cappo apparently wanted an object from that area. Mrs. Berry told her she would get it for her but after turning away momentarily, she observed Mrs. Cappo trying to cross the chair barricade to get to the ceramics room. Mrs. Berry testified that she retrieved Mrs. Cappo and sat her down in a chair. She further stated that she saw Mrs. Cappo fall a short time later as she was attempting to climb over or through the chair barricade.
The trial transcript reveals that the patrons had been repeatedly warned by loud speaker to avoid the area of construction and that the patrons had also been orally warned individually and in groups. In fact, at least two persons working at the Council testified that they specifically and personally advised Mrs. Cappo to avoid the area of construction.
The trial court determined that no witnesses had seen fallen or disarranged chairs immediately after the accident. The court noted that the plaintiff, though some 80 years of age and partially impaired by arthritis and hypertension, was "still possessed of her faculties sufficiently to be fully aware of her surroundings and activities and make her own judgments." The court also noted that from its observations at trial that the plaintiff could see adequately and was generally "quite alert and responsive." The court specifically noted that the plaintiff had been previously discouraged from crossing to the ceramics room through the area of construction and had been warned to stay away from that area.
While stating that it could not "determine exactly how the accident occurred," the trial court determined that "plaintiff was sufficiently competent and self sufficient to follow her own desires and deliberately chose to go into the area where the accident occurred despite specific warnings and instructions to the contrary."
Plaintiff appeals assigning as error the trial court's finding that Mrs. Cappo voluntarily assumed the risk in attempting to cross the barrier of chairs and that her voluntary act was the sole cause of the accident. Plaintiff also cites as error the conclusion of the trial court that the partially dismantled wall and presence of the chairs posed no threat or danger to senior citizens and, further, that they were not a contributing factor to the accident. Consequently, plaintiff contends that it was error for the trial court to refuse an award to Mrs. Cappo or to apply the theory of comparative negligence.
These contentions present the single issue of whether the trial court erred in determining that the defendant Council had properly discharged its duty to this senior citizen plaintiff.
Speaking for this court in Oswald v. Rapides Iberia Management Enterprises, Inc., 452 So.2d 1258 (La.App. 2d Cir.1984), writ denied 457 So.2d 14 (La.1984), Judge Norris succinctly summarized the standard of conduct Louisiana law requires of persons in their relationships with one another as a basis of delictual liability under LSA-C.C. Arts. 2315 and 2316 as follows:
Persons are liable for acts of commission and omission that cause damage to another under these articles if a duty imposed by the relationship of the parties is breached by such act or omission. Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981). The elements of a cause of action under Articles 2315 and 2316 are fault, causation and damage. The existence of a legal duty coupled with a breach of that duty are prerequisites to any determination of fault. Seals v. Morris, 410 So.2d 715 (La.1982). Thus, under the duty risk analysis, it must first be determined if the defendant's actions or omissions caused plaintiff's injuries; if they did, then it must be determined whether defendant owed plaintiff a duty of care and whether that duty protects the plaintiff from the harm incurred. Ross v. Central Louisiana *236 State Hospital, 392 So.2d 698 (La.App. 3d Cir.1980).
In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Seals v. Morris, supra.
Elderly persons are a special class, and thus persons chargeable for their care are held to a higher degree of care. The duty of the Council on Aging can be likened to that of a nursing home. While we have been unable to locate Louisiana jurisprudence dealing specifically with an institution of the type of the defendant here, we find guidance in the cases dealing with the duty of nursing homes. Just as in a nursing home, the duty of care required by this defendant should take into consideration the patient's mental and physical condition. Nichols v. Green Acres Rest Home, Inc., 245 So.2d 544 (La.App. 3d Cir. 1971). Since a nursing home has no duty to furnish a nurse or an attendant at all times, Oswald v. Rapides Iberia Management Enterprises, Inc., supra, Nichols v. Green Acres Rest Home, Inc., supra, it follows that this defendant also has no such duty. Moreover, while the Council undoubtedly is obligated to meet a high standard of care, it is not the insurer of the safety of its patrons. Murphy v. Allstate Insurance Company, 295 So.2d 29 (La. App. 2d Cir.1974), writ denied 299 So.2d 787 (La.1974).
Mrs. Cappo had been a patron of the Council on Aging and a participant in their programs for over a year and was familiar with the premises. She no doubt was alert enough to realize that the dismantling of the wall now afforded a shortcut into the room she wished to enter.
In the instant case, chairs on dollies and stacks of individual chairs on the floor were placed in an attempt to blockade the area of construction around a partially dismantled wall, thus preventing senior citizens from passing through the area. There is further evidence that the participants in the program were warned when they arrived at the Council premises to avoid the area. They were later warned by loud speaker. The plaintiff was individually warned at least twice. In fact, the trial court found that Mrs. Cappo disregarded specific warnings and was attempting to cross over the barrier of chairs when she fell.
Just as the trial court, we are convinced that Mrs. Cappo was sufficiently possessed of her faculties as to be fully aware of her surroundings and able to make her own judgments. We determine that the defendant's barricades when coupled with its warnings, both general and individual, were adequate precautions to satisfy the duty of care which the defendant institution owed the plaintiff.
We find, as did the trial court, that the cause of Mrs. Cappo's injuries was her own disregard for her safety in ignoring warnings and barriers which had been established for her safety. We further find that there was no negligence on the part of the Ouachita Council on Aging. The Council exercised the requisite amount of care toward elderly patrons that the particular circumstances required. We find no manifest error in the trial court's findings. For the foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.