501 So.2d 1014 (1987)
Annie Laura WALDEN and Freddie Vernon Walden, Appellant,
v.
PAT GOINS BENTON ROAD BEAUTY SCHOOL, INC. and the St. Paul Fire & Marine Insurance Company, in Solido, Appellee.
No. 18352-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*1015 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for appellant.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
Mrs. Walden and her husband brought suit against the Pat Goins Benton Road Beauty School (Pat Goins) and its insurer seeking damages for Mrs. Walden's personal injuries and Mr. Walden's consequent loss of consortium and services. Mrs. Walden was injured when she fell while getting out of a beauty chair at Pat Goins. She suffered serious injuries, including a cut over her eye and a fractured thigh bone which required her to be hospitalized for two weeks while an artificial joint was surgically implanted. In their original petition the plaintiffs asked for $85,000 in general and special damages for Mrs. Walden and $30,000 in damages for Mr. Walden. The trial court denied all claims and plaintiffs now appeal, raising two assignments of error:
(1) The court erred in finding that Mrs. Walden's injuries could not be attributable to the negligence of the beauty school;
(2) The trial court erred in determining that Mrs. Walden did not trip over the chair.
Plaintiffs ask that the trial court's judgment be reversed and they be granted the damages claimed by them. We find no merit in the assignments of error and are constrained to affirm the judgment of the trial court.
Mrs. Walden and her daughter, Louise Fullilove, went to the beauty school on December 15 to have their hair done. Both women had been there several times before. Mrs. Fullilove asked that a specific hairdresser, Anita Eberli, work on both women's hair. This required Eberli to split her time and attention between the two women. Eberli started with Mrs. Walden, then began with Mrs. Fullilove, so that by the time Mrs. Walden was having her hair brushed out in the beauty chair, her daughter was under the nearby dryers. Mrs. Fullilove testified that she and her mother were usually kept together while their hair was being done, but on this occasion they were separated when Mrs. Fullilove was under the dryer and her mother was in the chair. When Mrs. Walden's hair was finished, Eberli asked her for payment. Mrs. Walden explained that her daughter had the money, so Eberli asked Mrs. Walden to *1016 remain in the chair. She then turned and walked towards Mrs. Fullilove to remove her from under the dryer and possibly ask for payment, leaving Mrs. Walden alone in the beauty chair. Eberli said that she had been away from Mrs. Walden only two or three seconds when she heard Mrs. Fullilove cry out, and turned to see Mrs. Walden lying on the floor next to the chair, bleeding from the cut on her forehead. Neither Eberli nor Mrs. Fullilove saw Mrs. Walden fall. The beauty school manager called the emergency medical technicians, who found Mrs. Walden sitting up in a chair when they arrived. The paramedics administered first aid and then took Mrs. Walden to a hospital, where she was treated for the cut over her eye. Five days later Mrs. Walden underwent surgery to replace the fractured ball-and-socket joint in her hip. She was not discharged until December 28 and incurred substantial hospital and surgical bills. As a result of the accident Mrs. Walden had to use a walker for several weeks, and must still do so when outside. Even though she was able to walk unassisted by the time of her trial, she and her husband testified that her usual household and gardening activities have been severely curtailed. Her surgeon, Dr. Burt, assigned her a disability rating of 25%. This formed the basis of the claims for general damages.
Plaintiffs contend that the beautician's negligence caused Mrs. Walden's injury and that this negligence should be attributed to Pat Goins. We agree with the trial court that there was no negligence by either the beauty school or the attendant that gives rise to liability. In order to recover in a suit for personal injuries, the plaintiff must show duty on the part of the defendant, the breach of that duty, and damages caused as a result of the breach. Additionally, the plaintiff must show that the harm suffered could have been foreseeably associated with the breach of the duty, and that the harm suffered was of the type the duty was designed to prevent. Ballew v. The Southland Corp., 482 So.2d 890 (La.App. 2d Cir.1986).
A beauty shop is not required to be the guarantor of the safety of its customers. Smith v. Marks Isaacs Co., 147 So. 118 (La.App.Orl.Cir.1933). As a business, its fundamental obligations towards its invitees are to exercise reasonable care to protect its customers and to maintain its premises in a reasonably safe condition for use in a manner consistent with the purpose of the premises. Rousseau v. Deramus, 342 So.2d 276 (La.App. 3d Cir.1977); Martin v. Piggly Wiggly Corp., 469 So.2d 1057 (La.App. 2d Cir.1985); Gonzales v. Winn Dixie, 326 So.2d 486 (La.1976); Kavlich v. Kramer, 315 So.2d 282 (La.1975). Once we have decided the standard, we must determine what it requires in this case. What will constitute reasonable care varies in each case, and is dependent on the facts in each individual case. Normand v. Piazza, 145 So.2d 110 (La.App. 4th Cir. 1962). The mere fact that a plaintiff is elderly does not mean that he is entitled to greater care and assistance, just as the age of a plaintiff does not in and of itself affect the standard of care applied in determining contributory negligence. LaCava v. City of New Orleans, 159 So.2d 362 (La.App. 4th Cir.1964). The deciding factors would be rather any signs of feebleness, impairment of vision or hearing, disorientation of mind or body, or any other infirmities that may sometimes accompany old age. Here the plaintiffs made no showing that Mrs. Walden exhibited any signs of weakness or disability that should have alerted the beauticians to a need of special attention or aid. Indeed, the record shows that prior to the accident Mrs. Walden was alert, able to do her own housework, and worked in her garden. She visited her doctor regularly, and his reports gave no indication of any outwardly visible impairment. This was at least Mrs. Walden's third visit to Pat Goins, and she had never in the past needed any assistance in getting in or out of the beauty chairs. Mrs. Fullilove testified that neither she on behalf of her mother nor Mrs. Walden had requested any special assistance in the past, nor had they done so on this occasion. The record reveals no basis to believe that Pat Goins and Eberli either knew or should have known that Mrs. Walden would need any special care or assistance.
*1017 After Eberli had finished with Mrs. Walden's hair, she requested that Mrs. Walden remain in the chair until she had seen to Mrs. Fullilove. Eberli then walked ten or twelve feet over to the dryers to tend to Mrs. Fullilove. When she had been gone only a few seconds, she heard Mrs. Fullilove cry out, and turned to see Mrs. Walden lying on the floor.
In light of these facts, any theory of liability that would hold the defendant negligent would require constant supervision by the beautician. This court has previously decided that even the Council on Aging, which undoubtedly owes a high standard of care to its patrons, is not required to maintain constant supervision by an attendant. Cappo v. Alliance Insurance Co., et al, 499 So.2d 233 (La.App. 2d Cir.1986). Nor have we required that nursing homes maintain constant supervision over their elderly patients. Oswald v. Rapides Mgt., 452 So.2d 1258 (La.App. 2d Cir.), writ denied, 457 So.2d 14 (La.1984); Murphy v. All-State, 295 So.2d 29 (La.App. 2d Cir.1974). If we have refused to impose such a burden on organizations which specialize in taking care of the elderly, we cannot require it of a commercial establishment when the elderly customer has neither requested nor apparently needed any extra help. Constant supervision of an elderly customer when no special circumstances or requirements are shown is not dictated under the standard of reasonable care that a business owes its invitees. Defendants did not breach the duty of care owed to Mrs. Walden.
Our disposition of the first assignment of error makes the second irrelevant. It is the judgment that is appealed from, not the reasons therefor. State in the Interest of Mason, 356 So.2d 530 (La.App. 1st Cir. 1977). The plaintiffs' contention at trial and again on appeal is that Mrs. Walden tripped while getting up because her foot became tangled in the footrest of the chair. The trial court found that it was more likely that she fell because she became dizzy or fainted. There was conflicting testimony between Mrs. Walden and the two emergency medical technicians, Tim Thames and Gerald Newsom. Neither of them corroborated Mrs. Walden's version of the events. One testified that immediately after the accident Mrs. Walden said that she had fainted and fallen. The other remembered only that she had denied tripping. Mrs. Walden's physician, Dr. Brabham, testified that in the past Mrs. Walden had on a few occasions complained to him of dizziness and fainting spells. The trial court found that the testimony of the other witnesses, not the plaintiff's version, more nearly corresponded to what very likely caused the injury. The trial court's conclusion on that issue is not determinative of the outcome in this case. Regardless of what caused Mrs. Walden's fall, plaintiffs have failed to show negligence on the part of the beautician or the beauty school. Plaintiffs have not made a showing nor even argued any other basis of liability on the part of the defendants.
While we, as did the trial judge, sympathize with Mrs. Walden's plight, we find no merit in the plaintiffs' assignments of error and accordingly affirm the judgment of the trial court, assessing costs of the appeal against the plaintiffs.
AFFIRMED.