522 So.2d 1212 (1988)
Wanda B. PATTISON, et al.
v.
The B.F. GOODRICH COMPANY, et al.
No. CA-8675.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
*1213 Curtis R. Boisfontaine, John W. Hite, III, Sally A. Shushan, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendants/appellants.
J. Paul Demarest, Edward J. Rivera, Favret, Favret, Demarest & Russo, New Orleans, for plaintiffs/appellees.
Before GARRISON, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
The only issues raised in this appeal are causation and quantum. Liability for the accident is not at issue.
Defendant appeals the trial court's award of damages to three plaintiff's, all occupants of a vehicle rear-ended by defendant's vehicle on March 16, 1985. The driver, Wanda Pattison was awarded $18,000.00 in general damages and $2,533.03 in specials; the front seat passenger, Rita Backhaus, was awarded $33,000.00 in general damages and $5,034.54 in specials; and the rear-seat passenger, Dawn Backhaus, $8,500.00 general damages and $436.18 in specials. We affirm.
Civil Code Article 1999 provides:
"When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages."
The "much discretion" of Article 1999 should not be disturbed by this court absent a showing on the record that there was a clear abuse of that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). However, if this court finds that there was an abuse its discretion, then our function is to raise the award to the lowest amount that could have been awarded, or lower it to the highest amount. Reck v. Stevens, 373 So.2d 498 (La.1979).
Our initial question with respect to the awards of each plaintiff, then, is whether there has been an abuse of discretion. This threshold determination is to be made with respect to the particular facts and circumstances of this case. Reck v. Stevens, supra. And, in making that determination, our Supreme Court has repeatedly stated that review of prior awards is disapproved. Reck v. Stevens, supra; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Prior awards may serve as an aid only where the present award is shown to be greatly disproportionate to the mass of similar awards, and not just a selected few. Reck v. Stevens, supra.
With these guidelines in mind, we discuss each plaintiff's award separately.
WANDA PATTISON
This plaintiff was the driver of the vehicle. She is a 42 year old housewife, who baby-sits for children in her home. She testified that upon impact she hit her left arm on the car door. She felt sore over her whole body for about a week; and within a couple of weeks developed problems with her left elbow. However, she did not seek medical attention until August of 1985, some five months after the accident. She explained that she had no health insurance, and believed the injury would resolve itself.
Her initial visit to Dr. Murphy, an orthopedic surgeon, was August 16, 1985. Her *1214 complaints and discomfort to her left elbow was diagnosed as typical tennis elbow syndrome. Dr. Murphy injected her elbow with cortisone and placed her arm in a strap.
Subsequent visits indicate the symptoms had improved somewhat, but that there was still discomfort in her left elbow. On December 5, 1985 Dr. Murphy's examination revealed a considerable flare-up. On her December 15, 1985 visit, this plaintiff was given another cortisone injection. In March of 1986, because of persistent pain, a third cortisone injection was given.
After visits in April and May proved fruitless, surgery was scheduled for June 4, 1986. Plaintiff was admitted to Methodist Hospital on an outpatient basis and the inflamed tissue was removed. The sutures were removed June 19th, however plaintiff testified her arm was wrapped in bandages and maintained in a bent position for about six weeks.
Her final visit to Dr. Murphy was October 8, 1986 at which time she was discharged. Dr. Murphy testified, and the trial court noted for the record, that she has a 2 inch scar on her elbow. Furthermore, Dr. Murphy opined that she has 5% disability of the arm as a result of the surgery.
Defendant's expert Dr. James Williams, examined this plaintiff on October 1, 1986. He doubted, because of the lapse of time between the accident and her complaints, that the accident was the cause of her injury. He suggested that her injury could have just as easily been caused by lifting small children in her baby-sitting chores. He agreed she had a 5% anatomical disability, but no functional disability.
Defendant argues causation was not proved. Specifically they refer to a statement signed by this defendant in June of 1985 wherein she indicated that no one was injured in the accident. In rebuttal, Mrs. Pattison testified she was thinking of "injuries" in terms of broken bones and bleeding which required an immediate trip to the hospital. The trial judge admonished her that she should not have signed it if she, or the other occupants were having problems. The record is clear, however, that the trial judge believed Dr. Murphy when he opined that the injury was caused by trauma as a result of the accident. This conclusion is substantiated by the fact that this plaintiff had no elbow problems prior to the accident even though she had been lifting infants from time to time. There is no error in this finding.
Defendant further argues that the award of $18,000.00 is too high and cites numerous cases for comparison. Plaintiff cites just as many which award higher amounts. Each distinguishes the other's cases.
We need not discuss these comparison cases, since we find no abuse of discretion in the award. Evaluating the medical testimony and the particular facts and circumstances of this plaintiff, we cannot say there is abuse of such a magnitude as to warrant a modification of the judgment.
RITA BACKHAUS
This plaintiff was the guest passenger riding in the front seat at the time of the accident. She is the 64 year old housewife-mother of the driver. Upon impact, she struck the dashboard with her chest.
She testified that approximately two weeks after the accident she developed a burning sensation in her hip, and pains in her right leg. In May of 1985 she called her family physician, Dr. Mancuso who prescribed Mortin for her pain. Prior to the accident, Dr. Mancuso had treated this plaintiff for arthritis in her right hand, and she felt that he could prescribe medication to control the pain in her hip and leg.
Her symptoms did not subside, however, so she visited Dr. Mancuso in July. He increased her dosage of Mortin. According to this plaintiff the medication did not help so she saw Dr. Murphy on September 24, 1985.
After examination, Dr. Murphy felt she was suffering from nerve root irritation and prescribed Naprosyn for the pain. Subsequent visits indicate the medication helped the discomfort, however the pain continued.
*1215 Because of a severe increase of leg and hip pain and being bedridden for 3 days, Ms. Backhaus was hospitalized. She was placed in traction for four days and underwent a CAT scan. The CAT scan revealed degenerative changes in the lower lumbar region. Immediately subsequent to her release from the hospital there was some improvement, and as of January, 1986, Dr. Murphy found that her pain was intermittent. At that time he placed her in a corset.
The last visit to Dr. Murphy prior to trial was March 11, 1987. He had not discharged her and opined that it is possible her condition may persist ad infinitum. It was his conclusion that the trauma from the car accident aggravated a preexisting arthritic condition that was without symptoms prior to the accident. He assigned a 5% to 10% functional disability depending on future treatment.
Defendant's expert Dr. Williams examined this plaintiff once, on October 1, 1986. He opined:
"It was my opinion based on her history and examination that she had sustained a ligamentous strain in her lower back when she was involved in an automobile accident on March 17, 1985. The patient had evidence of a previously existing lumbar spondylosis. It was my opinion that this existed prior to [the] March, 1985 accident."
Dr. Williams suggested that the aggravation of Mrs. Backhaus' arthritic condition was due to her obesity. He also questioned the lapse of time between the accident and her complaints.
Defendant argues causation was not proved. In support thereof, he cites the expert opinion of Dr. Williams, as well as the failure of plaintiff to call Dr. Mancuso, her initial physician. Defendant urges that the failure to call Dr. Mancuso creates an adverse presumption against this plaintiff, citing Mills v. Sentry Insurance Co., 463 So.2d 20 (La.App. 5th Cir.1985), writ denied, 464 So.2d 1383.
While we agree that failure to call one's treating physician creates a presumption that his testimony would be unfavorable, that presumption is rebuttable. Id. See also, Bagley v. Commercial Union Insurance Company of New York, 216 So.2d 102 (La.App. 1st Cir.1968). In this case, it is clear the trial court was satisfied that the accident aggravated plaintiff's dormant degenerative condition. She had no prior back, hip or leg problems, only arthritis in her right hand. It is reasonable that she would call her family physician first, and then seek specialized medical help when her problems persisted.
We cannot conclude that the award to this sixty-four year old housewife is a clear abuse of discretion. Considering Dr. Murphy's opinion as to future problems, the amount of pain and discomfort experienced by this plaintiff, the side effects of the prescribed medications, and the fact that she was not discharged as of the trial date, we find no reason to disturb the award. Although we may have awarded a different amount at the trial level, we are not to substitute our judgment based on the recorded word for that of the trial judge who listened to, and witnessed the live testimony.
DAWN BACKHAUS
This plaintiff is the 23 year old daughter of Rita Backhaus. She was a rear seat passenger at the time of the collision. On impact she struck her right leg on the seat in front of her.
She first experienced or noticed pain in her right knee about two weeks after the accident while bowling. Subsequently the pain increased and her knee began to swell. On September 5, 1985 she visited Dr. Murphy. On this initial visit, Dr. Murphy stated:
"Basically, an examination of the knee itself was unremarkable. There was no effusion, no instability, no particular tenderness. There was tenderness however located to the area of bursa over the proximal tibia there and [I] basically felt she had a bursitis and placed her on anti-inflammatory medication and gave her some ointment to use and advised her to return for a follow-up evaluation."
*1216 Subsequent visits to Dr. Murphy on September 19th and October 3, 1985 indicated improvement in her symptoms. However, on December 12, 1985 swelling was noted, as well as increased pain. She was again placed on anti-inflammatory medication.
Because of increased complaints of pain, Dr. Murphy injected her knee with a cortisone type medication on January 9, 1986. A second injection was given during the March 6, 1986 visit.
This plaintiff was finally discharged on April 17, 1986. Dr. Murphy opined that the bursitis flare up this plaintiff experienced can be traumatically induced, and related its cause to the accident.
Dr. James Williams, defendant's expert, examined this plaintiff on October 7, 1986, approximately 6 months after her discharge from Dr. Murphy. He could find no abnormality nor evidence of bursitis. Based on the onset of pain two weeks subsequent to the accident, he opined her bowling activities could have caused the problem.
With respect to defendant's argument that there is a lack of causation, we disagree. Based on the medical evidence, and this plaintiff's testimony that she had no knee problems prior to the accident, the trial court could reasonably conclude the accident was the cause of her injuries.
Although we find the damage award on the higher end of the permissible scale, we cannot conclude that it is a clear abuse of discretion to warrant a reduction. This young plaintiff was a fairly active person who enjoyed numerous physical activities. There is no doubt she was restrained, for at least an 11 month period, from participating in those activities without some discomfort and pain. Although she has no residual disability, the facts and circumstances of this particular plaintiff do not warrant interference.
For the reasons assigned, the judgment is affirmed.
AFFIRMED.
WILLIAMS, J., dissents with reasons.
WILLIAMS, Judge, dissenting.
In view of the signed statement indicating no injuries had been sustained as a result of the accident and the failure to seek medical treatment until a significant amount of time had elapsed after the accident, I would be compelled to hold that each of the plaintiffs had failed to establish causation. In further support of this conclusion is the failure of one plaintiff to call her treating physician as a witness, and as to all of the plaintiffs, the consistency of the types of injuries with activities and/or conditions of the women, i.e., back injuries and obesity; knee injury and bowling.
Also, even if plaintiffs had carried their burden of proving causation, I would have serious reservations about the amount of extremely generous general damages awarded to them.