539 So.2d 989 (1989)
Carole VACCARO, et al.
v.
SPORTS & IMPORTS, INC., et al.
No. 88-CA-1947.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1989.
Writs Denied April 28, 1989.
*990 Joseph R. McMahon, Jr., New Orleans, for defendants.
Charles W. Dittmer, Jr., Domengeaux & Wright, New Orleans, for plaintiffs.
Before CIACCIO, WARD and PLOTKIN, JJ.
WARD, Judge.
Mr. and Mrs. Ralph Vaccaro sued Ronald Palazzotto, Sports and Imports, Inc. and its insurer Presidential Fire and Casualty Co., claiming damages for injuries sustained by Mrs. Vaccaro and their two children from an intersectional automobile collision on August 19, 1985. The Trial Judge rendered judgment in favor of the Vaccaros. Defendants appeal, contesting liability and damages.
While in the course and scope of his employment with Sports and Imports, Inc., Palazzotto drove west along Tulane Avenue in New Orleans, failing to stop for a red light at the intersection of South Jefferson Davis Parkway. Palazzotto's vehicle ran into the front left side of the vehicle driven by Mrs. Vaccaro who was in the process of crossing the intersection after her signal light on South Jefferson Davis had turned green.
Defendants concede their liability, but contend the negligence of Mrs. Vaccaro should reduce any award because of her comparative fault. Therefore, the only liability issue is the question of whether the Trial Court erred when it found Mrs. Vaccaro free from fault because, defendants allege, she could have exercised care to avoid the accident.
In general, operators of motor vehicles are continually under a duty to maintain a proper lookout and to see things they should have seen with the exercise of reasonable care. Nelson v. Evans, 470 So.2d 212 (La.App. 4th Cir.1985). Motorists at intersections have the duty to vigilantly watch for vehicles caught between signal light changes and may not depend exclusively upon a favorable light for the safety of their movements. Allen v. Burrow, 505 So.2d 880 (La.App. 2nd Cir.), writ denied 507 So.2d 229 (La.1987). However, a motorist is entitled to assume that signals are *991 understood and observed, and a motorist is not required to observe traffic facing a red light or to anticipate that another motorist will enter the intersection illegally on a red light. See, Hartford Accident and Indemnity Company v. Finley, 282 So.2d 830 (La.App. 1st Cir.1973).
In this case, the testimony of Palazzotto, Mrs. Vaccaro and her children proved that Palazzotto ignored a red light and entered the intersection of Tulane and the south-bound lanes of South Jefferson Davis Parkway. The testimony of Mrs. Vaccaro and her children shows that Mrs. Vaccaro entered the intersection after her signal turned green, and then only after she had looked to the left and right. The standard to be applied in reviewing the Trial Court's findings of facts is whether those findings are manifestly erroneous and not supported by the evidence. Considering the evidence, we conclude that the Trial Court did not commit manifest error when it found Mrs. Vaccaro free from fault.
The remaining issues in this appeal are the damage awards to Mrs. Vaccaro for her neck injury and to Mr. Vaccaro for loss of consortium of his wife.
The evidence showed that shortly after the accident of August 19, 1985, Mr. Vaccaro took Mrs. Vaccaro to a hospital emergency room where she was examined and sent home. A few days later, the Vaccaros flew to Florida for a vacation. They returned to New Orleans a day early because of pain and swelling in Mrs. Vaccaro's neck. Upon returning home, she went to the hospital emergency room and received pain medication. Following her severe reaction to the medication, the Vaccaros' family doctor, Dr. Lloyd Eyrich, admitted Mrs. Vaccaro to the hospital for two nights to control nausea. X-rays of her neck did not show any abnormality but after finding slight muscle spasm, Dr. Eyrich prescribed muscle relaxants and pain medication for what he diagnosed as cervical strain. Dr. Eyrich never treated Mrs. Vaccaro again.
In September, Mrs. Vaccaro went to Dr. John Jackson, a neurosurgeon, complaining of pain in her neck, left shoulder and arm. Her neurological examination, disc x-rays and CAT scan were normal. After finding some limitation of motion in her cervical spine, Dr. Jackson diagnosed her condition as a severe cervical muscle strain.
In October 1985 Mrs. Vaccaro sought treatment from a chiropractor, Dr. Rick Saluga, for pain on the right side of her body. His opinion, after review of X-rays he took, was that Mrs. Vaccaro had a loss of cervical curvature, indicative of soft tissue and ligament damage and a positive cervical disc syndrome. Dr. Saluga's treatment consisted of spinal manipulations, electric stimulation, and traction. He prescribed a cervical collar which Mrs. Vaccaro wore for a brief period of time.
In late January 1986, at Dr. Saluga's recommendation, Mrs. Vaccaro returned to Dr. Jackson for a magnetic imaging test (MRI). At this time, Mrs. Vaccaro complained that her pain was now on the left side, not the right. From the MRI, Dr. Jackson observed a mild to moderate bulge in the cervical disc at the C5-6 level, which was very slightly compressing the dura matter. Dr. Jackson testified that the bulging disc could account for Mrs. Vaccaro's complaints of pain switching from side to side of her body. Mrs. Vaccaro returned to see Dr. Jackson once in March and June 1986. Both times Dr. Jackson found significant improvements and believed that Mrs. Vaccaro would recover fully without surgery.
In December 1986 and January 1987, Mrs. Vaccaro returned to Dr. Saluga for chiropractic treatment. Dr. Saluga discharged her in January because he believed she had reached maximum medical improvement, albeit with some residual pain. At this time she described her pain level as a 1 or 2 on a scale of 10.
The day after she was discharged by Dr. Saluga, Mrs. Vaccaro went to see Dr. Richard Levy, a neurosurgeon. After studying the MRI scan, Dr. Levy believed that the slight bulge of the disc at the C5-6 level was acquired because of aging and should cause no pain or discomfort. He did not believe the bulge could cause Mrs. Vaccaro's symptoms to switch from side to side.
*992 Dr. Levy was of the opinion that Mrs. Vaccaro probably had an unusually long-lasting muscle-ligament strain.
Mrs. Vaccaro returned to Dr. Saluga for chiropractic treatment in July 1987, and after a few weeks of the same treatment she previously received, Dr. Saluga discharged her again.
A few days before her trial in May 1988, Mrs. Vaccaro returned for a visit to both Dr. Saluga and Dr. Jackson complaining of pain. Dr. Saluga felt that she would have periodic flare-ups of pain, manageable with conservative care. Dr. Jackson reiterated his belief that she had excellent chances for complete recovery without surgery.
In addition to the medical evidence just summarized, the testimony during trial showed that Mrs. Vaccaro, at the time of the accident, was a 40 year old school teacher who led an active life. In addition to teaching an elementary class full-time, she attended evening classes to obtain a master's degree in education. She enjoyed swimming, gardening and cooking.
Her employment as a teacher was not affected by her injury, but because of her injury she did delay one semester in pursuing her studies for a master's degree. Her injury did not prevent her from occasional travel between the accident and trial, but she testified that her injury caused her to miss a few social events during this time. She and her family testified that following the accident, her sporadic pain prevented her from doing house or yard work, cooking, gardening and swimming. The Vaccaros hired a housekeeper to do the housework previously done by Mrs. Vaccaro.
With respect to Mr. Vaccaro's claim for loss of consortium, Mr. and Mrs. Vaccaro testified that they abstained from sexual activity for four to five months after the accident. Mr. Vaccaro testified that, on ocassion, his wife has been irritable with the family and inhibited as to sexual activity, fearing pain.
On appeal, defendants assign error to the Trial Judge's finding of a causal relationship between the accident and all of Mrs. Vaccaro's symptoms. Because Mrs. Vaccaro's symptoms switched from side to side of her body even on a daily basis, defendants argue that a finding of causation is erroneous.
Based on the medical testimony, we conclude that Mrs. Vaccaro carried her burden of proof to show that her neck injury was causally related to the intersectional collision. The testimony of Drs. Eyrich, Jackson and Levy, as well as Dr. Saluga, shows that the automobile accident in August 1985 caused all the symptoms for which Mrs. Vaccaro was treated. Furthermore, the Trial Judge acted within his discretion in giving more weight to the opinions of Drs. Jackson and Saluga, who believed a bulging disc could account for symptoms switching from side to side, rather than the opinion of Dr. Levy, who disagreed. Consequently, we find no error in the Trial Judge's finding of causation.
Defendants also assign error to the Trial Judge's award to Mrs. Vaccaro for past and future pain and suffering, claiming that the award of $175,000.00 is excessive.
In reviewing damage awards, an appellate court may disturb an award only if the record reflects that the trier of fact abused its discretion in making the award. Upon finding an abuse of discretion, the award can only be raised (lowered) to the lowest (highest) point which is reasonably within the discretion of the trial court. Emerson v. Empire Fire and Marine Insurance Co., 393 So.2d 691 (La.1981), citing Coco v. Winston Industries, Inc., 341 So. 2d 332 (La.1977). To determine whether there has been abuse of discretion, we must consider the particular facts and circumstances of each case rather than merely review prior awards. Pattison v. B.F. Goodrich Co., 522 So.2d 1212 (La.App. 4th Cir.1988), citing Reck v. Stevens, 373 So.2d 498 (La.1979).
In this case, Mrs. Vaccaro sustained a relatively minor neck injury requiring no intrusive tests, surgery or hospitalization, except for hospitalization because of a reaction to medication. Her primary complaint was of intermittent neck and arm pain for which she sought medical treatment every few months for about two *993 years. All medical evidence shows that Mrs. Vaccaro's condition, identified for the most part only by her subjective complaints of pain, significantly improved over time. The record reveals that although Mrs. Vaccaro's activities have been somewhat curtailed, she nevertheless continues to be an extremely active person.
Overall, from the record we conclude that the accident had only a minimal to moderate effect on Mrs. Vaccaro's lifestyle. Hence, we find an abuse of discretion in the award for pain and suffering. In accordance with our review of the record and recent decisions involving similar, although more serious injuries, we feel that general damages of $75,000.00 is the highest amount reasonably within the Trial Court's discretion. We therefore reduce the general damage award to Mrs. Vaccaro to $75,000.00.
Defendants argue that the Trial Judge's award of $85,000.00 to Mr. Vaccaro for loss of consortium is also excessive. The testimony of Mr. and Mrs. Vaccaro, although indicating that Mrs. Vaccaro's injury did intrude upon their sexual relationship, does not support the award made by the Trial Judge.
Loss of consortium includes such elements as loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support, and loss of felicity or overall contentment and happiness. Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir. 1988). The only cases which affirmed loss of consortium awards in amounts near, although less than, the award made in this case involved a spouse who had experienced a long term and perhaps permanent deprivation not only of a sexual relationship, but also of service, companionship, support, etc.
In this case, the evidence proves only a minimal loss to Mr. Vaccaro of his wife's services of housework and yardwork. Mr. Vaccaro has suffered little deprivation simply because now a hired housekeeper must do the housework instead of Mrs. Vaccaro and because he and his son now must do the yardwork instead of Mrs. Vaccaro. Likewise, Mrs. Vaccaro's inability to attend several social functions since the accident does not constitute a serious deprivation of companionship to Mr. Vaccaro. Mr. Vaccaro's only significant loss is the temporary cessation of sexual relations.
Hence, having considered Mr. Vaccaro's various losses, we find that although he is entitled to some damage for loss of consortium, his losses do not merit the award made by the Trial Judge. Finding that the Trial Judge abused his discretion in this regard, we reduce the award for loss of consortium to $25,000.00, the highest amount we believe reasonably in the Trial Court's discretion.
Accordingly, we amend the judgment, decreasing Mrs. Vaccaro's general damage award from $175,000.00 to $75,000.00 and Mr. Vaccaro's loss of consortium award from $85,000.00 to $25,000.00. Otherwise, the judgment appealed from is affirmed. All costs of this appeal are assessed equally to the parties.
AMENDED; AFFIRMED AS AMENDED.