543 So.2d 563 (1989)
Geraldine TURNER, wife of/and Willie Turner
v.
KRAUSS COMPANY, LTD.
No. 88-CA-1881.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
Rehearing Denied June 14, 1989.
*564 Stephen P. Bruno, Bruno & Bruno, New Orleans, for Geraldine Turner, wife of/and Willie Turner.
Louis M. Kiefer, Jr., Kiefer & Cooper, Metairie, for Krauss Co., Ltd. and Employers Ins. of Wausau.
Before CIACCIO, WARD and PLOTKIN, JJ.
WARD, Judge.
Mr. and Mrs. Willie Turner sued Krauss Company, Ltd. and its insurer, Employers Insurance of Wausau, a Mutual Company, for injuries sustained by Mrs. Turner in Krauss Department Store. A jury rendered a verdict in the Turners' favor, awarding $120,000 in damages to Mrs. Turner, and $14,500 for loss of consortium to Mr. Turner. Defendants appeal the Trial Court's judgment, rendered in accordance with the jury verdict, contesting both liability and damages.
On the afternoon of May 4, 1984, Mrs. Turner went to Krauss to have a formal dress fitted for alteration. In a 4' × 5' changing room, Hilda Rio Leon, Krauss's seamstress, had Mrs. Turner stand on an eight inch high platform so that she could pin the hem on the dress. The fitting lasted about fifteen to twenty minutes during which time Rio Leon required Mrs. Turner to slowly turn around three times. As Rio Leon completed the fitting, Mrs. Turner became dizzy and fell on a chair in the changing room, injuring her back.
After the accident, Krauss's nurse, Alma Mizell treated Mrs. Turner and sent her to Dr. W.A. Roy for examination. After seeing Dr. Roy, Mrs. Turner went to the emergency room at Touro hospital and was placed under the care of Dr. James LaBorde, an orthopedic surgeon. Dr. LaBorde found tenderness in her mid-back, and X-rays showed a compression fracture of two vertebrae in her spine.
The record reveals Mrs. Turner was in severe pain until Dr. LaBorde admitted her into the hospital that day for bedrest and pain medication. Mrs. Turner remained in the hospital for twelve days, during which time she was confined to bed for six days. While still in the hospital, Mrs. Turner was also seen by Dr. Gordon McHardy, her family physician, and his associate. Dr. McHardy testified that, at the time, he treated her for systemic lupus erythematosis (SLE), a disease which may cause weakness and anemia. He testified Mrs. Turner was symptomatic for years, but he believed her symptoms were aggravated by the injury. According to the medical testimony, SLE involves the body's immune system, attacks the vascular system and can cause rashes, weakness and anemia. Through the years Dr. McHardy prescribed various medications for Mrs. Turner, some of *565 which are listed in the Physicians' Desk Reference Book as potentially causing adverse effects of weakness, dizziness, vertigo and nausea.
After her gradual improvement and discharge from the hospital, Mrs. Turner had a nurse at home for two weeks, and she wore a back brace for about six months. She began to see Dr. Charles Billings, an orthopedic surgeon. Dr. Billings treated her with conservative care, first examining her on June 1, 1984 and prescribing anti-inflammatory medication for her complaints of intermittent back pain. He restricted her activities, prohibiting heavy or repetitive lifting, repetitive bending and prolonged sitting or standing.
After three visits in the summer of 1984 and one in February 1985, Dr. Billings believed the fracture had healed, leaving Mrs. Turner with a 10% permanent disability. He felt she was capable of gainful employment in February 1985. Dr. Billings saw Mrs. Turner three more times in 1985, finding that while her condition had improved, she still had pain. He maintained the same restrictions on her activities. After three visits in 1986 Dr. Billings determined that she had chronic pain resulting from the injury in 1984. When he saw her shortly before the trial in May 1988, sixteen months after her last visit, Mrs. Turner's back pain was mild.
At the time of the accident Mrs. Turner, 56, worked part-time as a custodian at a Jefferson Parish public library, a job she had for over 25 years. She retired after the accident and was eligible to receive retirement benefits. The benefits she receives, however, are less than she would have received had she worked longer. The record indicates Mrs. Turner intended to work approximately three more years had she not been injured.
The testimony of the Turner family revealed the extent of her pain and discomfort and the drastic changes in her life since the accident. Before the accident, she was extremely active in church functionsreligious and social. She participated in many youth activities, such as Bible study, crafts, skating, baseball and hiking. Mrs. Turner often visited the sick and frequently traveled by car to visit relatives in Mississippi. She enjoyed cooking and was a meticulous housekeeper.
Since her accident, the record reveals, she has become relatively inactive. She no longer works with the youth program or travels. All of her other activities have been curtailed. She occasionally experiences pain when doing normal household chores.

LIABILITY
Defendants assign error to the jury verdict on liability. The jury determined that the negligence of defendants alone caused Mrs. Turner's injury. Because we conclude that the jury should have assessed some fault to Mrs. Turner under the comparative fault doctrine, we amend the judgment to assign a percentage of fault to Mrs. Turner.
In a negligence action under La. C.C. art. 2315 plaintiff must prove that defendant's conduct was a cause in fact of the injury; that defendant owed a legal duty encompassing the particular risk of harm to which plaintiff was exposed; that defendant breached that duty; and the damages sustained. Zellers v. National American Insurance Co., 514 So.2d 234 (La.App. 5th Cir.1987). As a business, one of Krauss's fundamental duties is to exercise reasonable care to protect its customers. Walden v. Pat Goins Benton Road Beauty School, 501 So.2d 1014 (La.App. 2nd Cir.1987). Incident to this general duty, we believe, is an obligation imposed upon businesses and their employees to aid a customer, or at least to not insist that a customer remain in a potentially dangerous situation, once alerted to the customer's illness or unusual condition.
The jury's conclusion that Krauss was negligent reflects a finding that Rio Leon failed to exercise reasonable care to protect Mrs. Turner by continuing the fitting having been told that Mrs. Turner was dizzy and wanted to sit down. In our opinion, it is not unreasonable to expect that a seamstress, when told by a customer that *566 the customer is dizzy, could anticipate that such a condition may cause the customer to faint or fall. Considering the evidence, the finding that Krauss breached a duty owed to Mrs. Turner is not manifestly erroneous.
Defendants assign error to the jury's finding that Krauss acted negligently because, they argue, the evidence proved that Mrs. Turner fell immediately after becoming dizzy, allowing the seamstress no opportunity to have rendered assistance to her to prevent her fall and consequent injury.
Rio Leon testified that after Mrs. Turner said she felt dizzy, she told Mrs. Turner to sit, and as she stood to help her, Mrs. Turner fell. Mrs. Turner, on the other hand, testified that after she told Rio Leon she was dizzy, Rio Leon said that she did not have much more to do. Then, when Mrs. Turner told Rio Leon she had to sit because of her dizziness, Rio Leon told her she could not determine whether the hem was straight if Mrs. Turner sat. Mrs. Turner testified that about one and one-half minutes later, she fell. She felt that there was enough time for Rio Leon to have helped her or allowed her to sit down. In a deposition taken before trial, Mrs. Turner stated that once she began to feel dizzy, she immediately told Rio Leon.
Obviously, Mrs. Turner and Rio Leon recounted two different versions of the incident. The jury chose to believe Mrs. Turner's version which tended to show that Rio Leon, attempting to quickly finish her work, disregarded Mrs. Turner's statements about being dizzy. We find no manifest error in this finding.
Defendants also argue that the jury verdict is erroneous because Mrs. Turner's injury was attributable to weakness associated with her prior medical history or caused by an adverse drug reaction rather than to Krauss's negligence. Admittedly, Mrs. Turner did have a history of SLE prior to her injury, as well as many other physical problems. Defendant's allegations that Mrs. Turner's injury was caused by her prior medical condition or adverse drug reaction are mere speculation and unsupported by the record. The evidence shows at best that Mrs. Turner may have been more prone to dizziness than the average person, but it does not prove that her dizzy spell on May 4, 1984 was attributable either to her medical condition or to a drug reaction. Rather, there is ample evidence in the record by which the jury could conclude that the circumstances surrounding the dress fitting, i.e., an extremely small room or the required turning movement, caused dizziness.
Defendants argue that the jury should have assessed some fault to Mrs. Turner because she failed to inform the seamstress that she was dizzy earlier that day. Krauss's nurse testified that after the accident Mrs. Turner said she had become overheated and dizzy earlier that day at a bus stop. At trial, Mrs. Turner denied being dizzy at anytime that day except before she fell.
In light of both the information contained in the accident report and the medical testimony, Mrs. Turner's denial that she was dizzy earlier that day is suspect. And even if we accept her testimony, there remains evidence that Mrs. Turner suffered from a disease which, when treated by medication, may result in weakness, dizziness and vertigo. Mrs. Turner had a duty either to inform the seamstress that she may become dizzy by turning around while standing on a pedestal, or to avoid participating in an activity which would obviously exacerbate a proclivity to dizziness caused by anemia or vertigo.
Moreover, we believe that Mrs. Turner could have stepped off of the platform and sat down notwithstanding the seamstress's insistence on finishing the fitting. In the minute and a half between her telling Rio Leon she was dizzy and her fall, Mrs. Turner could have told Rio Leon that her condition had worsened. Although neither Rio Leon nor Mrs. Turner may have known that Mrs. Turner's dizziness would cause her to fall and be injured, Mrs. Turner was at least in a better position to know this than Rio Leon because only she knew exactly how she felt. For these reasons, the *567 jury erred in finding Mrs. Turner free from fault.
In sum, the jury's finding that a cause of Mrs. Turner's injury was Krauss's negligence, through the actions of its employee, is supported by the record. The jury's finding, however, that Mrs. Turner did not contribute to her own injury is not reasonable nor supported by the record. Thus, the Trial Court's judgment on liability is amended to reduce Mrs. Turner's recovery by 50% under the comparative fault law of Louisiana.

DAMAGES
In reviewing damage awards, an appellate court can disturb an award made in the trial court only where the record indicates that the trier of fact abused its discretion in making the award. Emerson v. Empire Fire and Marine Insurance Co., 393 So.2d 691 (La.1981).
The record shows that Mrs. Turner injured her back as a result of her fall. She required hospitalization and had to wear a back brace. Although eventually the fracture healed and Mrs. Turner's condition improved, she nevertheless experienced pain for years. The record also shows that because of her injury, Mrs. Turner retired early and had to discontinue or curtail many activities.
The $120,000.00 lump sum jury award to Mrs. Turner must have included special damages, and defendants argue that Mrs. Turner's expert economist's figure of $84,389.00 in special damages was erroneous because it included loss of future wages. We agree.
The record reveals that even without the injury Mrs. Turner would have retired by the date of trial, four years after the accident. She was not entitled to future lost earnings at the time of trial as her expert testified, she was only entitled to past lost wages. Paul Seabrook, Mrs. Turner's co-worker, testified that, before the accident, Mrs. Turner told him daily of her plan to retire in three or four years. At trial Mrs. Turner testified that at the time of the injury she had planned to work at least three more years.
Mrs. Turner is, however, entitled to a retirement benefit differentialthe amount of increase in her monthly benefits had she retired later than she did. The record contains projected increases for retirement at age 62 and 65. Mrs. Turner's expert calculated her loss based on retirement at age 65. Although we believe retirement at age 62 is the more appropriate variable to use, we will accept the expert's $10,136.00 loss figure since defendants did not offer evidence of projected loss at any other age.
The record supports special damages of at least $50,000.00. This includes stipulated medical expenses of $5,700.00, past lost wages of $34,316.00 and future loss of higher retirement benefits of $10,136.00.
The past wage loss is based on her yearly wages of $8,579.00 for the four years between the day of injury and trial. Defendants are not entitled to a credit on this amount because of the retirement benefits Mrs. Turner has received. Swann v. City-Parish, 492 So.2d 1225 (La.App. 1st Cir.1986). Bonnet, Etc. v. Slaughter, 422 So.2d 499 (La.App. 4th Cir.1982).
Subtracting the amount of special damages which is supported in the record, Mrs. Turner's award for general damages is approximately $80,000.00. Defendants argue the award is excessive.
To determine whether the jury has abused its discretion, we must consider the particular facts and circumstances of each case rather than merely review prior awards. Pattison v. B.F. Goodrich Co., 522 So.2d 1212 (La.App. 4th Cir.1988) citing Reck v. Stevens, 373 So.2d 498 (La.1979). After carefully reviewing the record in this case as well as reviewing other awards, we believe the award to Mrs. Turner falls within the range of prior awards made for injuries with facts similar to this case. See for example, Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir.1985).
The jury's award was not divided into amounts for loss of wages, pain and suffering, etc. Hence, we cannot determine exactly *568 what figures the jury considered for these categories. Nevertheless, considering the evidence of lost earnings, medical expenses and general damages, we do not find the damage award excessive. See, Mihalopoulos v. Westwind Africa Line, Ltd., 511 So.2d 771 (La.App. 5th Cir.1987).
Accordingly, we amend the judgment of the Trial Court as to liability and affirm the judgment on damages and liability, as amended. All costs of this appeal are assessed to defendants.
AMENDED; AFFIRMED AS AMENDED.