514 So.2d 180 (1987)
Anna PERKINS
v.
Gary V. RICKS, et al.
No. CA-7154.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 1987.
Rehearing Denied November 18, 1987.
Writ Denied January 29, 1988.
*181 Allain F. Hardin, Wiedemann & Fransen, New Orleans, for plaintiff-appellee, Anna Perkins.
James J. Morrison, Jr., New Orleans, for defendants-appellants, Gary V. Ricks, et al.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
WARD, Judge.
This suit was instituted by Anna Perkins for personal injuries sustained in Rick's Restaurant. Defendants are Gary V. Ricks d/b/a Rick's Restaurant and/or the Ritz, and Security Insurance Company.
A jury rendered a verdict in Perkins's favor for $40,000 in general damages, $20,000 in special damages for future lost income, and $1,060 in medical expenses. Defendants appeal the Trial Court's judgment, rendered in accordance with the jury *182 verdict, contesting both liability and quantum.
Perkins, a licensed cosmetologist, and her friend, Linda Parker, went to lunch at Rick's Restaurant in Algiers on August 30, 1983. During lunch, Perkins's chair collapsed and she fell to the floor injuring her shoulder. Two other customers, Debra Lier and Terry Ehrlich, witnessed the incident. After refusing a restaurant employee's suggestion to go to a doctor in the building, Perkins went to a hospital later that day. The record contains no information on this hospital visit.
At the advice of her attorney, Perkins consulted Dr. Wilmont Ploger, an orthopedic surgeon, who examined her on the day of the accident. Dr. Ploger diagnosed a contusion of the right shoulder and a strained shoulder joint, and prescribed pain medication and heat treatment. Perkins visited Dr. Ploger twice in September but failed to keep an appointment in October. During these visits, she complained of pain, numbness in her hand, and decreased strength in her arm, and Dr. Ploger found tenderness in the shoulder joint and restricted motion of the shoulder. Both symptoms, however, were present only in Perkins's first September visit. Otherwise, Dr. Ploger found no abnormalities and recommended conservative treatment. He felt she could return to work by September 19.
Dr. Ploger did not see Perkins again for over five months. On February 21, 1984, she returned with complaints of increased pain in her shoulder and neck. He found some tenderness but found that her neck motion, as well as the neurological examination and X-rays, were all normal. He prescribed a drug and physical therapy to relieve soreness in joints and muscles. The therapist noted, in the initial session on February 28, 1984, that Perkins's shoulder motion was significantly restricted; this condition, however, improved with the therapy.
Dr. Ploger saw Perkins twice in March and once in April 1984. By April, he observed normal motion in both spine and shoulder, and found only mild tenderness in the shoulder. He terminated her therapy after concluding that she had gained the maximum benefit from it, and he suggested only that she continue heat treatment and exercise at home. This was the last time he saw Perkins as she did not keep her next scheduled appointment a month later.
Perkins was in an automobile accident in June 1984 and testified that the impact was so great that she was "paralyzed instantly" and able to walk only after surgery. She stated that the accident "irritated" her shoulder, and that she had two "cardiac arrests" after this accident.
At trial, Perkins also testified that she continues to experience pain, that her lifestyle has changed because, for example, she cannot hold her grandchildren, and that she was forced, because of the injury, to close her beauty salon which she claims to have opened a few weeks before she was injured in the restaurant. She explained that her failure to seek medical treatment for five months was caused by her depression following her husband's deathwhich occurred three years before the incident in the restaurant.
Dr. Ploger testified that, in his opinion, Perkins probably sustained an injury to her shoulder joint from her fall which did not resolve itself in the normal period of three to six months. He gave no estimate of percentage of disability. His affirmative response to a question as to whether Perkins may risk a future affliction of bursitis or arthritis did not indicate whether the risk was any greater for Perkins than for other people.

LIABILITY
Defendants assign error in the jury verdict on liability. The jury determined that defendants were strictly liable to Perkins under La.C.C. art. 2317, and further, that defendants could not claim victim fault as a defense. We find no error in the jury's assessment of liability, and affirm the judgment of the Trial Court in this regard.
*183 La.C.C. art. 2317 imposes strict liability upon custodians of things that cause injury. To establish liability under the article Perkins had to prove that the chair was in defendants' custody, that the chair had a vice or defect, and that her injury was caused by this vice or defect. Campbell on behalf of Campbell v. State, through Department of Highways, 439 So.2d 1175 (La.App. 4th Cir.), writ denied, 443 So.2d 588 (La.1983). The jury found that Perkins proved these elements.
Defendants claim that testimony of two independent witnesses, Lier and Ehrlich, shows that Perkins caused her own injury by wiggling the chair and not getting out of the chair before it collapsed. Apparently, the jury chose instead to believe the testimony of Perkins and her lunch companion, Parker, which tended to show that Perkins did nothing to cause her own injury. The jury's finding that Perkins did not contribute to her own injury, we believe, is reasonable and supported by the record. Thus, the Trial Court's judgment on liability is affirmed.

DAMAGES
In reviewing damage awards, an appellate court may disturb an award made by the Trial Court when the record reflects that the trier of fact abused its discretion in making the award. Emerson v. Empire Fire and Marine Insurance Co., 393 So.2d 691 (La.1981). If the factual basis for the award is not reasonably supported by credible evidence in the record, that award is manifestly erroneous and can be reversed on appeal.
The record shows that Perkins injured her shoulder joint as a result of her fall in the restaurant. The record also shows that Perkins's non-debilitating injury required neither hospitalization nor surgery. She sustained no lacerations or fractures and was treated conservatively with heat, medication and therapy. This treatment, the record indicates, substantially improved her condition. Although she was never formally discharged as fully recovered, Perkins's discontinuation of medical treatment three weeks following the injury, together with all of the evidence in the record, indicates that her injury could not reasonably have been found to merit the sum awarded in general damages.
Dr. Ploger never found atrophy or spasm. He found swelling only on Perkins's initial visit and normal range of motion by her third visit. He obtained normal X-rays and neurological examinations. While her injury may not have been resolved in the normal amount of time, Perkins's termination of medical treatment eight months following her fall indicates, we believe, that the injury was eventually resolved. Without having seen Perkins for over two years prior to trial, Dr. Ploger's reference to any potential for her symptoms to have "lingered" is mere speculation. Any lingering or new symptoms could have just as likely resulted from her automobile accident.
Moreover, Perkins's complaints at trial of unbalanced arm reaches, poor handwriting, numbness in her hand, and pain when exposed to air or cold weather, were not confirmed by Dr. Ploger with the exception of complaints of numbness noted on her second visit. Overall, Perkins's claim for damages is based on subjective complaints of pain, while virtually all objective evidence reveals normal results. And, as we will later explain, Perkins's testimony was seriously impeached, rendering her credibility questionable at best.
After carefully reviewing the record, we conclude that the general damages award is excessive and unsupported by the evidence. We will lower the award to the highest point which we believe is reasonably within the discretion afforded the jury. Emerson, supra. Thus, the general damage award is $20,000.
Turning now to Perkins's claim for special damages, the jury awarded $20,000 to Perkins for lost future income, which the Judge instructed was equivalent to diminished earning capacity. Defendants assign error to the Trial Judge's failure to instruct the jury that without proof of prior profits or income, no award can be made for loss of future income or profits. Defendants also assign error to the jury's verdict on *184 lost future income claiming that it is an abuse of discretion.
Perkins was 40 years old when she fell in the restaurant. She received her cosmetology license in 1981 and opened a beauty salon in 1983. The salon, she claims, remained opened for approximately one month.
With regard to an amount the jury may award to Perkins for future lost income or diminished earning capacity, the Trial Judge instructed the jury:
You are to consider the plaintiff's physical condition prior to the accident, her work record, the amount of her income in previous years, the probability or improbability that she would have earned similar amounts during the remainder of her work life if she had not sustained the injury for which she has filed this lawsuit....
Loss of future income is not merely predicated upon the difference between a plaintiff's earnings before and after a disabling injury, but upon the difference between a plaintiff's earning capacity before and after an injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La. App. 2nd Cir.1984). Loss of future income awards thus encompass the loss or reduction of a plaintiff's earning potentiala person's capability to do that for which she is equipped by nature, training, and experience, and for which she may receive compensation. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The Trial Judge's instruction to the jury properly assigned and communicated the relative importance of Perkins's work record prior to her injurythat is, the jury was to consider her earning potential before and after the injury. Defendants' assignment of error on the jury instruction is, therefore, without merit.
We do find error, in the jury's award to Perkins for future lost earnings. Because this type of award is inherently speculative, courts should exercise sound judicial discretion in making them, and render awards that are consistent with the record and just to all parties. Robinson v. Graves, 343 So.2d 147 (La.1977). Finding that the record not only lacks necessary evidence to support the award but also contains evidence which clearly contradicts any basis for the award, we hold that the $20,000 award for future lost income is a clear abuse of discretion.
Before an award can be made for lost future income, the trier of fact must first determine whether and for how long a plaintiff's disability will impair her earning potential, that is, the effect the injury had on plaintiff's ability to earn a living. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Vial v. Armstrong, 479 So.2d 583 (La.App. 1st Cir.1985). Only after making this threshold determination should the jury consider the factors which were enumerated by the Trial Judge in his jury instruction.
Because no evidence was presented as to whether or for how long Perkins's earning potential was impaired, her loss of future earnings cannot reasonably be determined. Perkins's only treating physician made no disability assessment. Indeed, his only testimony relating to Perkins's ability to work was that he felt she could return to work three weeks after the accident.
The only testimony indicating a decrease in earning potential, aside from Perkins's own complaints of pain at trial, was given by the receptionist at Perkins's beauty salon who stated that customers complained that Perkins did not roll their hair tightly enough. This testimony is woefully insufficient to establish a disabling injury causing a loss in future earnings. Furthermore, there was no expert testimony on Perkins's work life expectancy or projected earnings.
Even assuming there was evidence by which the jury could have reasonably found disability which impaired Perkins's work, the only evidence which could conceivably support the jury's award for loss of future income is so discredited as to render that award clearly wrong. The documentary evidence contradicts Perkins's testimony about her work record and earnings at her beauty salon prior to her accident. At trial, *185 whether Perkins opened her beauty salon before or after the incident in the restaurant was a highly disputed issue. The dispute is relevant to the issue of lost future earnings because if the evidence proves that Perkins opened a beauty salon after sustaining, and notwithstanding, the injury, she is not entitled to any award for lost future earnings.
Based solely on their memories, Perkins and her receptionist claim the business opened in mid-August 1983, before the August 30 accident, and closed at the end of September 1983. The documentary evidence all contradicts a mid-August 1983 opening.
The application to renew her shop owners' license, which Perkins claims was displayed in her beauty salon when it opened, has a notation which clearly indicates that the initial license was issued to Perkins well after the August 1983 accident. The notation, a carbon imprint from the original license, reads:
Initial
11-29-83
$45.00
This November 1983 date cannot be, as Perkins claims, the date the license was to be renewed because the application specifically states that the license is to be renewed annually, between January and March. Thus, because Perkins first obtained her shop owner's license in 1983, the license would not have to be renewed on November 29, 1983. Obviously, Perkins did not obtain a license until November 29, 1983, approximately three months after the accident.
Newspaper advertisements concerning employment opportunities at the beauty salon were also introduced into evidence. It was undisputed that the advertisements were published in December 1983, well after Perkins claims to have closed her business. Perkins explained that she prepaid the advertisements, but we find this explanation unconvincing.
Defendants introduced various documents into evidence concerning Perkins's lease of the premises for her beauty salon. Although the evidence indicates that Perkins moved into the shop over a period of time and was given the first month rent-free, the lease date, nevertheless, is noted as "11-14-83" on the leasing agent's file card and the lease itself is dated October 22, 1983. These dates probably differ because there was a misunderstanding, testified to by Perkins, about the exact amount of rent; regardless of the discrepancy, however, the card and the lease clearly indicate Perkins did not open a beauty salon on the premises until after the accident. An eviction notice dated January 4, 1984 for non-payment of rent from November 15, 1983 to January 31, 1984 was also introduced into evidence, further discrediting Perkins's claims about the dates her business was in operation.
In addition, Eloise Hurta, an employee of the leasing company, testified at trial that Perkins did not open the beauty salon until late October 1983 at the earliest. Not only was Hurta's testimony based upon the documents drawn up in connection with the lease, but also on her personal observation of the premises which she passed each day on her way upstairs to work at the leasing company.
Perkins's assertion that she was forced to close her business in September 1983 because of the injury sustained in the restaurant is, thus, unsupported and contradicted. Although we may not be able to ascertain the exact date that Perkins actually opened her business, the documentary evidence refutes her claims of a mid-August 1983 opening and late September 1983 closing. Although the opening date is an important inquiry for a proper consideration of the factors set forth in the jury instruction, the jury either ignored or misinterpreted the evidence. We are unable to find any evidentiary basis for the jury's award for lost future income.
We find, therefore, that the jury verdict awarding Perkins $20,000 for lost future income was not based on a reasonable interpretation of the evidence and, indeed, was contrary to the weight of both documentary and testamentary evidence. This verdict was a manifest abuse of discretion, and we thus have determined, under the *186 evidence, that Perkins is not entitled to any amount for lost future income.
In summary, although we affirm the Trial Court judgment on liability, the evidence on pain and suffering does not support the jury award for general damages particularly in light of Perkins's testimony which we find incredible. Therefore, the judgment is amended to decrease the award for general damages from $40,000 to $20,000, the amount which we believe is the highest amount reasonably within the jury's discretion. Furthermore, for reasons detailed above, we discount any award for lost future earnings and thus eliminate that award in its entirety. All costs of this appeal are assessed to Perkins.
AFFIRMED AS AMENDED.