562 So.2d 1157 (1990)
Nathalie A. AVERNA
v.
INDUSTRIAL FABRICATION AND MARINE SERVICE, INC., et al.
No. 89-CA-1244.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
*1159 Gregory P. Di Leo, New Orleans, for plaintiff.
Mark C. Suprenant, Michael C. Darnell, New Orleans, for defendants.
Before LOBRANO and ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
Defendant, Industrial Fabrication and Marine Service, Inc. ("Industrial"), appeal the trial court's judgment finding it liable for an automobile collision involving one of its drivers and ordering it to pay plaintiff's damages. Plaintiff appeals the quantum of general damages.
On May 22, 1985, in the morning hours, on Airline Highway near the Palmetto Street overpass, Kenneth Williams was operating a tractor trailer owned by Industrial. He was coming into the city in the second lane from the curb when he attempted to change to the lane closest to the curb and in so doing collided with the vehicle being operated by the plaintiff, Nathalie Averna. Miss Averna lost control of her vehicle and spun in front of the defendant's tractor and finally came to rest on the neutral ground.
It was stipulated that Kenneth Williams was operating within the course and scope of his employment with Industrial Fabrication & Marine Services, Inc., and that Colony Insurance Company provided insurance coverage to the defendants to the extent of the policy limits of $500,000.00.
As a result of the collision, Averna's injuries resulted in three separate surgeries: a two level fusion of protruding cervical discs C4-5 and C5-6 levels, carpal tunnel surgery of Averna's right wrist, and *1160 removal of a painful and voice threatening contact granuloma of the right arytenoid; a complication resulting from the anethesia tube placed in Averna's throat during the cervical fusion.
Averna also suffered from an aggravation by trauma of a spondylolisthesis of the low back which contributed to her total body disability. The fusion surgery performed by Dr. Stuart Phillips, Averna's treating orthopedic surgeon, has failed at one level. Averna is restricted on a permanent basis from heavy lifting, looking all the way up and all the way back, working with her arms over her head, pushing with her wrist, bending, stooping and prolonged sitting. She suffers discomfort at the graft site where bone was taken from her hip in completion of the cervical fusion surgery. She required treatment for depression from a psychologist.
After hearing all of the testimony and evidence, the trial court rendered judgment in favor of Averna and against defendants, jointly, severally and in solido as follows: general damages in the sum of $135,000.00; future lost wages or impairment of earning capacity in the sum of $90,000.00; loss of fringe benefits in the sum of $75,000.00; loss of household services in the sum of $5,000.00; past lost wages in the sum of $24,273.00; past medical expenses in the sum of $19,258.17; and hospitalization in the sum of $1,691.87, all with legal interest from the date of judicial demand until paid and for all costs of proceedings.
On appeal, Industrial raises five assignments of error. In its first assignment of error Industrial argues that the facts and circumstances of the case are such that if the trial court could not find Averna at fault for the accident then there was sufficient evidence to find Averna comparatively negligent for the accident. Industrial argues that of the five witnesses who testified concerning the accident only Averna and defendant Williams had actual knowledge of the collision. Stoddard Nathanson "heard the accident" and claims to have observed facts prior to the accident but did not actually see the collision. Walter McClendon has knowledge of facts prior to the accident but did not actually see the beginning of the collision. Industrial points out that the testimony of those witnesses who testified on behalf of Averna is riddled with discrepancies and there is an issue relating to the credibility and truthfulness of Averna in giving her testimony.
All of the witnesses who testified were viewed by the trial court which is in a better position to judge their credibility than the appellate court which does not see or hear the witnesses. Fontenot v. Fontenot, 546 So.2d 322 (La.App. 3d Cir.1989). The trial court's finding that the plaintiff was free of any negligence was a factual determination within the trial court's great discretion which should not be disturbed in the absence of manifest error. Brightman v. Regional Transit Authority, 543 So.2d 568 (La.App. 4th Cir.1989). Nor should the appellate court disturb these factual findings when the evidence before the trier of fact furnished a reasonable basis for the trial court's finding. Petersen v. State Farm Auto. Ins. Co., 543 So.2d 109 (La. App. 3d Cir.1989); Kelley v. Great Atlantic and Pacific Tea, 545 So.2d 1099 (La. App. 5th Cir.1989), writ denied 550 So.2d 629 (La.1989).
The findings of Officer Frisard, the investigating officer, corroborate Averna's testimony and that of the witnesses she offered at trial; that Averna was adjacent to the cab of the 18-wheeler when it changed lanes, causing this two-car collision.
Under La.R.S. 32:79, which has the same language as Section 38-90 of the Traffic Ordinances of the City of New Orleans, a clear case of liability can be made against the defendants. Section 38-90 reads as follows:
Whenever any roadway has been divided into two or more clearly marked lanes of traffic, the following rules, in addition to all others consistent herewith shall apply.
a. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
*1161 A motorist who attempts to change lanes on a multiple lane highway must ascertain before turning that the maneuver can be made safely without endangering normal overtaking or oncoming traffic. The greater burden of care is required for the motorist changing lanes than is demanded of a driver proceeding at a lawful rate on a straight line in a marked lane. Raymond through Raymond v. Deaton, 423 So.2d 724 (La.App. 1st Cir.1982); Deumite v. West Bank Contractors, 343 So.2d 289 (La.App. 1st Cir.1977); Ellis v. Coleman, 309 So.2d 716 (La.App. 4th Cir.1975).
Moreover, when there is a change of lanes by a motorist immediately preceding an accident, the burden of proof is on the motorist changing lanes to show that it first ascertained that his movement could be made safely. Trabeaux v. Sanchez, 279 So.2d 793 (La.App. 4th Cir.1973); Kennedy v. Mitchell Engineering, 518 So.2d 1128 (La.App. 4th Cir.1987), writ denied 523 So.2d 231 (La.1988) and 523 So.2d 232 (La. 1988). Defendants could not meet this burden of proof at trial.
Nor can we say that the trial court erred in assessing no fault to Averna. Defendants offered testimony that Averna was speeding and racing through traffic. This testimony was given by Walter McClendon, a long time friend of defendant Williams who happened to be travelling on Airline Highway on the date of the accident. McClendon did not see the events that immediately led up to the accident. The trial court heard this testimony and was able to weigh it along with all the other evidence presented at trial. We find no error in the trial court's assessment of liability.
In its second assignment of error, Industrial delineates five instances where it argues the trial court erred in its evidentiary rulings.
First, it argues that the trial court admitted summaries of deposition testimony when Averna had not qualified under the statutory exceptions requiring the original depositions. LSA-C.E. articles 1002 and 1004. However, the summaries of depositions were submitted to the court simply as an aid and were not offered into evidence.
Second, Industrial objects to Averna's use of Susan L. Smith, licensed occupational therapist, registered as both an occupational therapist and as a vocational evaluator. If error was committed here it was harmless error as Ms. Smith gave no testimony as a vocational evaluator.
Third, it objects to Averna's former employer, Charles Schwarz, giving testimony as to the employer pension plan and other fringe benefits which were lost with her job at Equadorian Line, Inc. due to her need for surgery. The trial court inquired as to the witness' competency, the trial court had the pension plan formula before it from which to calculate its own values. Therefore, any error committed by the trial court would have been harmless error resulting in the same judgment. Moreover, the decision by a trial court that a witness has sufficient knowledge or expertise to give testimony as to the existence of a pension plan, whose formula speaks for itself, is a factual and credibility determination which should not be overturned absent manifest error.
Fourth, Industrial maintains that the trial court prejudiced their case by not allowing the opinion testimony of Robert Vaughn, a party and non-expert. Vaughn's testimony, which defendants proffered, concerned the speed and acceleration of the truck involved in the accident. The witness admitted that the acceleration test was conducted about three years after the accident when the truck was ten years old with a different engine in it. This testimony was correctly excluded by the trial court.
Fifth, Industrial objects to the trial court's ruling excluding the testimony of Karl Krueger, proffered to impeach Averna's testimony that she did not ever recall speeding on Airline Highway. The trial court held that any testimony which this witness might provide as to Averna's driving in 1985, or on any day other than the date of the accident, was not relevant. Even if it is proper rebuttal or impeachment *1162 testimony, it has no bearing on the propriety of Averna's driving on the date of the accident concerning which there was adequate corroborative testimony in favor of Averna.
In its third assignment of error, Industrial argues that the trial court's award of special damages was improper. As to loss of future income, it argues that the expert's projections are unrealistic and unfounded.
As articulated in its reasons for judgment, the court considered all the factors in Perkins v. Ricks, 514 So.2d 180 (La.App. 4th Cir.1987), writ denied 519 So.2d 117 (La.1988) before awarding Averna $90,000.00 for impairment of earning capacity. Both parties submitted expert deposition testimony by economists. The difference between Averna's expert, Dr. Melville Wolfson, and Industrial's expert, Dr. Kenneth J. Boudreaux, is that Dr. Boudreaux used a lesser earnings base as well as lower increase rate and discount figure. The two experts also disagreed on how to calculate Averna's work life. The trial court had the benefit of both their calculations and analysis. Although it failed to articulate what earnings base, increase rate or discount figure was being used, the fact that the amounts lie somewhere between the calculations submitted by the two experts establishes that the trial court's award is supported by the evidence.
The correct test for reviewing a damage award is not to second guess the trial court as to other reasonable conclusions it could have reached, but to review the trial court's findings to see if the record reflects that the trier of fact abused its much discretion. Turner v. Krauss Co., Ltd., 543 So.2d 563 (La.App. 4th Cir. 1989), writ denied, 548 So.2d 1247 (La. 1989). The appellate court should look to the facts of the individual case. Vaccaro v. Sports and Imports, Inc., 539 So.2d 989 (La.App. 4th Cir.1989), writ denied, 541 So.2d 1391 (La.1989); Roger v. Cancienne, 538 So.2d 670 (La.App. 4th Cir.1989), writ denied, 542 So.2d 1382 (La.1989). The trial court's award is supported by the evidence.
Industrial argues that an award of $75,000.00 in fringe benefits was not appropriate under the facts and circumstances of this case. However, it cites no authority for its position that an award for fringe benefits was inappropriate. In fact, the court's award is much lower than that of Averna's economist who calculated the value of lost fringe benefits to be $146,202.00.
Pension losses and other fringe benefits are recoverable as a matter of law under Faciane v. Carter, 381 So.2d 1312 (La.App. 4th Cir.1980); see also, Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26 (La.App.3d Cir.1980), and Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir.1982). Averna itemizes her fringe benefits as follows: $119.00 per month for parking, $231.00 per month for hospitalization, major medical and dental insurance coverage at $4,200.00 per year, life insurance premiums paid by the employer of $469.00 per year and money purchased retirement pension plan with a contribution rate of 12% of her earnings, or $3,000.00 annually. Fringe benefits were $7,669.00 per year gross and were not subject to income taxes. The value of fringe benefits increased Averna's impairment of earning capacity by an additional $146,202.00. We find that the award of fringe benefits was fair and proper.
Industrial argues that the trial court's award of $24,245.00 for lost wages is excessive. Using her 1986 income tax return, $24,417.00, as an earnings base, Dr. Wolfson, Averna's economic expert, calculated Averna's loss to date of trial as $24,273.00 as follows:
It has been found that by taking the difference between $24,417 minus what she actually earned in 1987 of $12,976. The difference is $11,441.
1988 it was assumed she worked 5 weeks at $19,000 annually, and she worked from April 1, '88 to June 10, '88, at $16,000 annually. That $4,894 was then subtracted from the pro-rated earnings at [$24,417] through September 22, '88 and that $12,832 was added to the $11,441, and the total loss was $24,273.
*1163 Dr. Boudreaux felt that it was error to use Averna's 1986 salary as an earnings base because she did not demonstrate that she could consistently earn this amount. However, the reason that Averna was forced to seek employment paying less money and requiring less hours of work was because she underwent surgery that was later learned to be unsuccessful. If it had not been for her injuries she could have retained her better paying jobs and there was testimony to that effect. The trial court's award for lost wages is reasonable and supported by evidence in the record.
By way of an answer to Industrial's appeal, Averna argues that the trial court abused its discretion in awarding only $135,000.00 in general damages. She cites Rollins v. Elks Place Professional Plaza, 505 So.2d 149 (La.App. 4th Cir.1987), to support her contention that the damages for failure of fusion surgery were inadequate. She also maintains that the damages for hip pain and scarring, aggravation of low back condition, loss of enjoyment of life and impairment of lifestyle were inadequate. Averna relies on Seegers v. State Farm Mutual Automobile Ins. Co., 188 So.2d 166 (La.App. 2nd Cir.1966), in arguing that the trial court should have awarded damages for Averna's personality change. Finally, Averna cites Cummings v. Nixon, 442 So.2d 1291 (La.App. 3d Cir. 1983) in arguing that the trial court's award for mental anguish did not account for the resulting fears and anxieties she has experienced since the accident.
The trial court did not break down the general damages award into categories, but indicated that the lump sum of $135,000.00 was to cover all elements that are considered to constitute general damages. Specifically the court stated in its reasons for judgment:
The court finds that an award of $135,000.00 is adequate for the pain, suffering, mental anguish disability, scarring and loss of lifestyle that the plaintiff has suffered and will suffer in the future.
For an appellate court to disturb a general damage award by a trial court, the record must clearly reveal an abuse of discretion by the trier of fact in making the award. Coco v. Winston Industries Inc., 341 So.2d 332 (La.1977); Hernandez v. Schwegmann Giant Supermarkets, 464 So.2d 902 (La.App. 4th Cir. 1985). Upon determining that an abuse of discretion did indeed take place, the general damage award can only be raised to the lowest point which was reasonably within the discretion of the trial court.
Averna urges us to consider Fitzgerald v. Gulf International Cinema Corp., 489 So.2d 306 (La.App. 4th Cir. 1986), a case in which a plaintiff who endured similar injuries was awarded $275,000.00 in general damages. The injury to the plaintiff in Fitzgerald differed somewhat from Averna's injury in that Averna actually suffered an aggravation of a congenital defect, spondylolisthesis. Although there is evidence that Averna endures chronic pain it was her testimony and that of her physicians that this pain is relative to weather, to the position that she is in and how preoccupied her mind is. Her own testimony revealed remarkable control of her pain and she has no obvious physical indication of her injury that might be a source of embarrassment or humiliation in her day to day activities. Averna presents no specific instances of abuse nor does she assert that the trial court overlooked some of the evidence. Finding that the trial court did not abuse its discretion in awarding Averna $135,000.00 we decline to disturb its general damage award.
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.