NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1014

JESSICA DAUZAT, ET AL.

VERSUS

MARCUS COOPER, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2013-8934-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

AFFIRMED.

Sean P. Rabalais
Casler, Bordelon, & Lawler
11550 Newcastle Avenue, Suite 200
Baton Rouge, LA 70816
(337) 347-0096
COUNSEL FOR DEFENDANT/APPELLANT:
    Progressive Security Insurance Company

**Norris J. Greenhouse**
**214 North Main Street**
**P.O. Box 444**
**Marksville, LA 71351**
**(318) 253-6394**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Jessica Dauzat**

**Cory P. Roy**
**Roy & Scott, Attorneys at Law**
**P. O. Box 544**
**Marksville, LA 71351**
**(318) 240-7800**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Daniel Lachney**
**Lacey Lachney**

**Heather L. Landry**
**Milling Benson Woodward, L.L.P.**
**445 North Boulevard, Suite 200**
**Baton Rouge, LA 70802**
**(225) 291-7300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Louisiana Insurance Guaranty Association**

**PETERS, J.**

The defendant in this litigation, Progressive Security Insurance Company (Progressive), appeals the fault aspects of a trial court judgment rendered against it in favor of the plaintiffs, Jessica Dauzat and Daniel Lachney, awarding them monetary damages for the injuries they sustained in an August 7, 2012 automobile accident. For the following reasons, we affirm the trial court judgment.

## DISCUSSION OF THE RECORD

The accident at issue occurred on the afternoon of August 7, 2012, in Baton Rouge, Louisiana, and involved a vehicle driven by Jessica Dauzat and one driven by Marcus Cooper. At the time of the accident, both Ms. Dauzat's 1999 Ford F-150 King Cab pickup truck and Mr. Cooper's 2002 Chevrolet Tahoe were traveling eastbound on Interstate 10 (I-10) between the Siegen Lane and Essen Lane exits when Ms. Dauzat's vehicle struck the rear of Mr. Cooper's vehicle. Daniel Lachney occupied the front passenger seat of Ms. Dauzat's vehicle; and his daughter, Lacey Lachney, occupied the back seat. Katie Touchet occupied the front passenger seat of Mr. Cooper's vehicle. Progressive insured Mr. Cooper's vehicle for liability purposes, and Southern Casualty Insurance Company (Southern Casualty) insured Ms. Dauzat's vehicle for underinsured/uninsured coverage.

On February 4, 2013, Ms. Dauzat and Mr. Lachney filed a suit for damages against Mr. Cooper, Progressive, and Southern Casualty.[1] In their suit, the plaintiffs asserted that Mr. Cooper suddenly and without warning switched lanes,

---

[1] Mr. Lachney asserted a claim for damages individually and on behalf of his minor child, and the trial court rejected that claim after trial. Additionally, by the time the matter went to trial, any issue involving Southern Casualty had been resolved. Also, at the beginning of the trial on the merits, the plaintiffs dismissed Mr. Cooper as a party defendant, leaving Progressive as the only defendant.

thereby causing the accident. The matter went to trial against Progressive on June 11, 2014.

After completion of the two-day evidentiary phase of trial, the trial court rendered oral reasons for judgment finding Mr. Cooper to be solely at fault in causing the accident and awarded general and special damages to Ms. Dauzat in the amount of $35,156.38; and awarded general and special damages to Mr. Lachney in the amount of $34,850.12. On July 8, 2014, the trial court executed a written judgment conforming to the oral reasons for judgment and, thereafter, Progressive perfected this appeal. In its appeal, Progressive asserts that the trial court erred in concluding that the accident was caused solely and exclusively by the fault of Mr. Cooper.

## OPINION

The plaintiffs assert that the accident occurred when Mr. Cooper attempted to change lanes on I-10, and that this action on his part created a sudden emergency. The trial court agreed.

Louisiana Revised Statutes 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway[,]" and Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached that required standard of conduct and is presumed negligent. *Mart v. Hill*, 505 So.2d 1120 (La.1987). Still that driver may overcome this presumption by establishing the existence of a sudden emergency caused by the forward vehicle that the following motorist could not have reasonably anticipated. *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 03-0680 (La. 12/3/03), 861 So.2d 536; *Boudreaux v.*

2

*Wimberley*, 02-1064 (La.App. 3 Cir. 4/2/03), 843 So.2d 519, *writ denied*, 13-1251 (La. 9/5/03), 852 So.2d 1037.

With regard to changing lanes, La.R.S. 32:79(1) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." In addition, La.R.S. 32:104(A) provides that "[n]o person shall...turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety." Furthermore, in the event of a lane change maneuver, a motorist must use signals to indicate an intention to change lanes. La.R.S. 32:104(D).

The jurisprudence has recognized that "a motorist attempting to make a lane change on a multiple-lane highway is required to determine that the maneuver can be 'made safely without endangering normal overtaking or oncoming traffic' before attempting the lane change." *Daigle v. Mumphrey*, 96-1891, p. 5 (La.App. 4 Cir. 3/12/97), 691 So.2d 260, 263, quoting *Averna v. Industrial Fabrication & Marine Service, Inc.,* 562 So.2d 1157, 1161 (La.App. 4 Cir.1990). The motorist changing lanes "is held to a greater burden of care than is a motorist proceeding on a straight line in a marked lane at a lawful rate," and "when a motorist has changed lanes just prior to an accident, that motorist bears the burden of proving that he determined that the movement could be made safely prior to attempting the move." *Id.* As recognized in *Anthony v. State Farm Mutual Insurance Co.,* 227 So.2d 180, 183 (La.App. 2 Cir.1969):

> A motorist whose vehicle is struck from the rear by reason of his inopportune change of lanes may not thereby convert the occurrence into a rear-end collision so as to impose the burden upon the other motorist to exculpate himself from negligence. In such cases, plaintiffs have the burden to establish, by a reasonable preponderance of evidence, the facts upon which they rely, that is, in this instance,

3

that a rear-end collision occurred. Otherwise a defendant would bear the burden of establishing his freedom from fault in all cases involving accidents occasioned by a forward motorist's changing of traffic lanes. Such a shift of the burden of proof is neither authorized nor countenanced by statutory enactments or by pronouncements found in the jurisprudence.

The four adult occupants of the vehicles provided the trial court with testimony concerning how the accident occurred, and this testimony was factually conflicting. The trial court choose to accept the version of the accident established by the plaintiffs' testimony, and it is well settled in Louisiana's jurisprudence that a reviewing court may not set aside a factfinder's determinations absent manifest error. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

It is undisputed that both vehicles were eastbound on I-10 between the Essen Lane and Siegen Lane exits immediately before the accident, and that construction in that area had reduced the highway to two eastbound lanes. According to Ms. Dauzat and Mr. Lachney, immediately before the accident both vehicles had been traveling in the left, or inside lane of I-10, with the Cooper vehicle in the lead. Mr. Cooper attempted to change lanes into the right lane, but before he had completed the maneuver, changed his mind and attempted to move back into the left lane in front of Ms. Dauzat. When he started to move back into the left lane, Ms. Dauzat's right front bumper struck Mr. Cooper's left rear bumper, causing Ms. Dauzat's vehicle to veer to the left and strike the concrete wall separating the median between the eastbound and westbound lanes.

Both Ms. Dauzat and Mr. Lachney testified to a number of lane changes in heavy traffic by the two vehicles in the moments before the accident and asserted that at no time did Mr. Cooper signal his intent to change lanes. Mr. Lachney testified that it appeared Mr. Cooper was attempting to move to the right lane thinking the traffic would be less congested, but half-way through that maneuver

4

he realized that the right lane was more congested than the left and attempted to move back into the left lane.

On the other hand, Mr. Cooper and Ms. Touchet testified that from the time they entered I-10 at its intersection with Acadian Throughway Mr. Cooper remained in the right lane and was not attempting to change lanes when Ms. Dauzart's vehicle struck theirs. They remained in the right lane because they were unfamiliar with the highway and did not want to miss the exit to the Mall of Louisiana. Mr. Cooper testified that as he and the vehicle in front of him slowed at a normal pace, he heard a screeching of tires, looked in the rear view mirror, and saw Ms. Dauzart unsuccessfully swerve to avoid the collision.

In its reasons for judgment, the trial court specifically found Ms. Dauzat and Mr. Lachney to be credible, and found that Mr. Cooper was not a credible witness. Specifically, the trial court stated that Ms. Dauzat and Mr. Lachney were "very, very, simple people, not capable of malingering." The trial court further found that "Ms. Dauzat was so not coached which is to be applauded that she couldn't get left and right correct. She was trying to explain the story about whether they were in the left lane or the right lane and she confused a lot of her own testimony. I cannot punish her for that, she was not trying to mislead the court in anyway. She's a simple person. She's not a college graduate obviously[.]" The trial court also noted that although Mr. Lachney was a convicted felon, its conclusion was that his testimony was credible. Specifically, the trial court noted that "[t]he man is not capable of misleading the court. He's a simple person, he doesn't have the capacity or the ability to spin a web of deceit and tell us a good story. He can only tell us what he believes to be the truth."

On the other hand, the trial court found Mr. Cooper to be "a well oiled machine, almost robotic. A good story and obviously a better story teller." Of specific significance to the trial court was Mr. Cooper's denial under oath of the preparations he made the night before trial. The trial court found that this testimony caused Mr. Cooper's credibility to be "strained." The trial court also found that the photographs depicting the damage to the two vehicles supported the plaintiffs' version of the accident. In addressing the specifics of the accident itself, the trial court factually found that Mr. Cooper had left the left lane of travel immediately before the accident, that Ms. Dauzat accelerated to fill the gap left by Mr. Cooper vacating the left lane, and that Mr. Cooper then attempted to reenter the left lane before completing his maneuver into the right lane, thereby creating a sudden emergency, and that the point of impact was "a foot and a half over into the plaintiff's lane."

In reviewing the evidentiary record, we recognize that inconsistencies exist in the testimony of all of the witnesses, and that Ms. Dauzat's testimony is particularly confusing. As pointed out by the trial court, she transposed directions when attempting to identify the position of her vehicle at specific times leading up to the accident. Additionally, her use of time and distance at various times before the accident was not realistic; she gave a vague and seemingly conflicting written statement to the investigating officer immediately after the accident; and although an attempt was made to effect a sketch of the final positions of the vehicles at the time of the accident, the sketch generated is less than helpful. Still, the ultimate result of Ms. Dauzat's testimony was to establish the factual scenario accepted by the trial court.

This court recently reasserted that basic rule of appellate review of factual determinations in *Poole v. Poole*, 08-1325, p. 5 (La.App. 3 Cir. 4/1/09), 7 So.3d 806, 810 (second alteration in original), wherein it stated the following:

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. [*Stobart*, 617 So.2d 880 (La.1993).] Where there is conflict in the testimony presented at trial, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's credibility determinations are subject to the strictest deference, and the manifest error or clearly wrong standard demands great deference for the trial court's findings. *Theriot v. Lasseigne*, 93-2661 (La.7/5/94), 640 So.2d 1305. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. Thus, if the trial court's decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. *Rosell*, 549 So.2d 840.

Following the guidelines set forth in *Poole*, we first note that a reasonable basis does exist for the trial court's factual findings, and although other factual findings could be just as reasonable, we do not find that the trial court was clearly wrong or manifestly erroneous. We find no merit in Progressive's assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment finding Marcus Cooper to be solely at fault for the accident and awarding Jessica Dauzat and Daniel Lachney damages. We assess all costs of this appeal to Progressive Security Insurance Company.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.