# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 08-1325


ROBIN POOLE

VERSUS

WENDELL E. POOLE


************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CATAHOULA, NO. 25,125B
HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.


**AFFIRMED.**

**Walter E. Dorroh, Jr.**
**Dorroh & Kendrick, APLC**
**Post Office Box 1889**
**Jena, LA 71342**
**(318) 992-4107**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Robin Poole**

**Paul A. Lemke, III**
**Owens & Lemke, Inc.**
**Post Office Box 595**
**Harrisonburg, LA 71340**
**(318) 744-5431**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Wendell E. Poole**

PETERS, J.

Robin Poole appeals the trial court's grant of a divorce to her former husband, Wendell E. Poole, based on her adultery, asserting two assignments of error:

1) The trial judge erred in overruling the exception of no cause of action filed to the reconventional demand alleging adultery.

2) The trial judge erred in accepting the testimony of the alleged paramours of Mrs. Poole.

For the following reasons, we affirm the trial court judgment.

The record establishes without dispute that the litigants were married on November 22, 1996, and that this litigation began with Mrs. Poole's May 8, 2008 filing of a petition for divorce. In her petition, Mrs. Poole asserted that she and Mr. Poole last resided together as husband and wife on May 3, 2008, and based her request for relief upon her intention to continue to live separate and apart from her husband as required by La.Civ.Code art. 102. She also sought, among other relief, spousal support, claiming to have been free from fault in causing the breakup of the marriage.

Mr. Poole responded to this petition by filing an answer and reconventional demand. In this May 20, 2008 filing, Mr. Poole contested Mrs. Poole's spousal support demand, asserting that she was at fault in causing the breakup of the marriage. Specifically, he asserted that Mrs. Poole had committed adultery. The act of adultery was the basis for his reconventional demand for a divorce. Mrs. Poole filed an answer to the reconventional demand in which she denied having committed adultery.

The matter went to trial on all issues on June 30, 2008, and upon the completion of the evidence presentation, the trial court took the matter under advisement. Without issuing reasons for judgment, the trial court executed a written

judgment on August 11, 2008, granting Mr. Poole an immediate divorce based on Mrs. Poole's adultery. This appeal followed that judgment.

**OPINION**

*Assignment of Error Number One*

Mrs. Poole's first assignment of error addresses, not the trial on the merits, but a preliminary ruling by the trial court. Mrs. Poole responded to Mr. Poole's reconventional demand by filing, among other pleadings, a peremptory exception of no cause of action as to his adultery claim.

As previously stated, Mr. Poole filed his reconventional demand on May 20, 2008. With regard to the adultery claim, the reconventional demand stated that:

> [D]efendant in reconvention had an affair with Travis McCready, plaintiff in reconvention only found out 2 months ago, and assumes that the parties left the "Natchez Under the Hill lounge" and went parking. Plaintiff in reconvention states that he was asleep on the couch and defendant in reconvention was asleep in the bedroom, when the defendant in reconvention's daughter, Christina Smart came into the bedroom to confront her mother, and awoke plaintiff in reconvention due to their altercation between the mother and daughter, when plaintiff in reconvention tried to interrupt the altercation he then learn [sic] that the defendant in reconvention had slept with her daughter's boyfriend.

In her June 3, 2008 answer to the reconventional demand, Mrs. Poole addressed the adultery issue with the following response:

> Plaintiff, Ms. Robin Poole, attests that she did not at any time commit adultery against the defendant by having an affair with Travis McCready or any other person. Travis McCready is the boyfriend of plaintiff's daughter, Christina Smart. Plaintiff has only ever escorted both her daughter, Christina Smart, along with Travis McCready, in plaintiff's vehicle when the two have requested that plaintiff give them a ride to various locations. Plaintiff has never left the Natchez Under the Hill Lounge or any other location with Travis McCready without the accompaniment of plaintiff's daughter, Christina Smart. Plaintiff has never gone "parking" with Travis McCready or any other person at any point and time.

2

Her exception of no cause of action, which was filed on June 26, 2008, asserted that Mr. Poole did not "support his allegations with a specific date, time, or place that he alleges [Mrs. Poole] committed" adultery, and that without such information, she could not "provide an adequate defense" by establishing where she was at the time alleged.

The function of an exception of no cause of action under La.Code Civ.P. art. 927(A)(5) is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts that are alleged in the petition. *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So.2d 1234 (La.1993). When trying an exception of no cause of action, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. In *Industrial Companies, Inc. v. Durbin*, 02-665, pp. 6-7 (La. 1/28/03), 837 So.2d 1207, 1213 (citations omitted), the supreme court explained:

> The exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. In reviewing a trial court's ruling sustaining an exception of no cause of action, the appellate court . . . should conduct a *de novo* review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. Simply stated, a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial.

Louisiana Civil Code Article 103(2) provides that "[e]xcept in the case of a covenant marriage, a divorce shall be granted on the petition of a spouse upon proof that . . . [t]he other spouse has committed adultery."[1] Thus, the law does provide Mr.

---

[1]The matter before us is not a covenant marriage.

Poole a remedy if he can prove the allegation of adultery. The inquiry on appeal, therefore, is whether Mr. Poole alleged facts in his petition which would afford him relief under La.Civ.Code art. 103(2), not whether Mr. Poole could prevail at trial.

The supreme court held in *Simon v. Duet*, 177 La. 337, 339, 148 So. 250, 251 (1933), that "[w]hen adultery is relied upon as a cause of action for divorce, it must be alleged in the petition or complaint that the act was actually committed. Otherwise no cause of action is expressed." The court explained that "[i]t will not suffice to merely set out conduct from which it may be inferred that the act was committed. It must be alleged that the offending party was guilty of adultery, or was guilty of having sexual connection or intercourse, which mean the same thing." *Id.* at 251. Here, Mr. Poole alleged that Mrs. Poole had committed adultery and that she had an affair with Travis McCready, which is sufficient to establish grounds for an immediate divorce under La.Civ.Code art. 103(2).

Following our *de novo* review, we conclude that the trial court did not err in denying Mrs. Poole's exception of no cause of action. In reaching this conclusion, we do not suggest that Mr. Poole's pleadings were adequate in all respects. The lack of information, however, should have been addressed by a dilatory exception of vagueness or ambiguity, as provided for in La.Code Civ.P. art. 926(A)(5), or by discovery.[2]

### *Assignment of Error Number Two*

In her second assignment of error, Mrs. Poole argues that the trial court was clearly wrong in concluding that Mr. Poole established that she committed adultery. This is a factual determination of the trial court that is subject to the manifest

---

[2]The record contains no evidence that any discovery was pursued by either litigant.

4

error/clearly wrong standard of review. *Stobart v. State, Through Dep't. of Transp. & Dev.*, 617 So.2d 880 (La.1993).

In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* Where there is conflict in the testimony presented at trial, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's credibility determinations are subject to the strictest deference, and the manifest error or clearly wrong standard demands great deference for the trial court's findings. *Theriot v. Lasseigne*, 93-2661 (La. 7/5/94), 640 So.2d 1305. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. Thus, if the trial court's decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. *Rosell*, 549 So.2d 840.

The evidence at trial concerning the adultery issue was certainly contradictory, and the principal witness against Mrs. Poole was her alleged co-respondent in adultery, Travis McCready. Mr. McCready, who is a resident of Natchez, Mississippi, testified that he did commit adultery with Mrs. Poole and that the single act occurred in September of 2005. According to Mr. McCready, he met Mrs. Poole at a bar in Natchez, Mississippi, on an evening in late September of 2005. After some conversation at the bar, she offered him a ride home. On the trip to his house, she

pulled the vehicle off the highway, and they engaged in vaginal sexual intercourse in the vehicle. This, according to Mr. McCready, was the only time he had sexual relations with Mrs. Poole, although he continued to see her on a regular basis at various bars in Natchez.[3] He was eighteen years old at the time.

Mr. McCready testified that over two years later, in October of 2007, he began "hanging out" with Christina Smart (Ms. Smart), Mrs. Poole's daughter.[4] According to Mr. McCready, he fell in love with Ms. Smart and his conscience got the best of him. Rather than continue to lie to Ms. Smart, on April 5, 2007, he told her about the September 2005 sexual encounter with her mother.[5]

Mr. McCready admitted on cross-examination that he used to smoke marijuana once or twice per week, has abused both prescription drugs and alcohol, and has been convicted twice of driving while intoxicated. He also admitted that he had lied to Ms. Smart in the past when questioned about any prior relationship with her mother, and specifically about whether he had sexual relations with her. Mrs. Poole's counsel also suggested that perhaps Mr. Poole had paid for his testimony. While admitting that he had financial problems from time to time, Mr. McCready testified that Mr. Poole had never offered to give him money.

In her testimony, Ms. Smart acknowledged that Mr. McCready had confided in her in April of 2007 and said that, upon hearing Mr. McCready's confession, she went directly to her mother's and Mr. Poole's home, confronted her mother about Mr.

---

[3]Mr. McCready claims to be a musician who performed with a group at various establishments in the Natchez, Mississippi area.

[4]Mr. Poole is not Ms. Smart's father.

[5]Mr. McCready claims his need to confess to Ms. Smart arose from guilt on his part as well as the fact that someone had informed Ms. Smart of a relationship between him and Mrs. Poole. In the past, Ms. Smart had confronted him about having sex with her mother, but he had denied to her that it ever happened.

McCready's confession, and informed Mr. Poole that her mother had committed adultery with Mr. McCready.

While acknowledging on cross-examination that she was still extremely upset at her mother, that Mr. Poole was paying her tuition for technical college, that she lived in a trailer provided her by Mr. Poole, and that he pays all of her utility bills, Ms. Smart denied that Mr. Poole's kindnesses to her provided a financial incentive for her to testify. She stated that she was testifying against her mother because she felt it was the right thing to do. However, she also acknowledged that she left home in October of 2004, before she graduated from high school, because she and her mother "did not get along at all."

In his testimony, Mr. Poole denied that either Mr. McCready or Ms. Smart were paid to testify on his behalf. He stated that he would have continued to pay Ms. Smart's expenses even if she had chosen not to testify at the trial.

In response to the allegations against her, Mrs. Poole testified that she did not commit adultery with Mr. McCready in September of 2005 and was never alone in a vehicle with him, although she admitted meeting him at the bar at some time in the past. She also testified that she had not had sex with any man other than Mr. Poole since her November 1996 marriage. Mrs. Poole introduced the testimony of four character witnesses, all of whom testified as to her positive reputation for honesty and truthfulness.[6]

Jessica Smart, another of Mrs. Poole's daughters, also testified concerning a March 2008 discussion she had with Mr. Poole wherein he told her that he wanted a divorce from Mrs. Poole, and that he had wanted one for five years. She was also

---

[6]These four witnesses were Geraldine Blackwell, Mrs. Poole's mother; Vickie Hamilton, Mrs. Poole's sister-in-law; Barry Hamilton, Jr., Mrs. Poole's brother; and Jessica Smart.

7

present at the April 5, 2008 confrontation between her mother and her sister and testified that her sister, while intoxicated and angry, asserted that their mother had been sleeping with both of their boyfriends.

John Morgan Hall, a twenty-two-year-old resident of Natchez, Mississippi, testified on behalf of Mr. Poole on rebuttal. He asserted that in January or February of 2008, he met Mrs. Poole at Dimples in Natchez, went to her Jonesville, Louisiana home with her, and had sexual intercourse with her.[7] Interestingly, he testified that Mr. McCready, Christina Smart, Jessica Smart, and Jessica's boyfriend were present at the Jonesville home as well. According to Mr. Hall, he became acquainted with Mrs. Poole through his friendship with Mr. McCready and Christina Smart. He had to admit to use of marijuana, a conviction of driving while intoxicated, and a conviction for theft. Furthermore, he could produce little or no detail concerning the evening in question.

This is an exceedingly close case involving credibility determinations on the part of the trial court. While we might well have made different credibility determinations and reached a different result, particularly because the only evidence of adultery is the normally highly suspect testimony of the co-respondent in adultery, we cannot say that the trial court was clearly wrong in accepting the testimony of Mr. Poole's witnesses to conclude that Mrs. Poole had committed adultery with Mr. McCready.

---

[7]Dimples is the same establishment where Mr. McCready is alleged to have met Mrs. Poole. We note that Mr. Hall's testimony was presented on rebuttal and, therefore, cannot be used for the purpose of establishing the adultery allegation. We further note that the testimony was elicited without objection and assume that it is was submitted to offset Mrs. Poole's testimony that she had not had sexual relations with any man other than her husband since her marriage, as well as the character evidence presented on her behalf.

## DISPOSITION

We affirm the trial court's judgment granting Wendell E. Poole an immediate divorce from his wife, Robin Poole, pursuant to La.Civ.Code art. 103(2). We assess all costs of this appeal to Robin Poole.

**AFFIRMED.**