VERNON MARTIN

VERSUS

CITY OF CROWLEY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2016-10085
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.

AFFIRMED.

SAVOIE, J., concurs and assigns written reasons.

Ben L. Mayeaux
Quincy L. Mouton
NeunerPate
1001 W. Pinhook, Suite 200
Lafayette, LA 70503
(337) 237-7000
COUNSEL FOR DEFENDANT-APPELLEE:
    City of Crowley

M. Benjamin Alexander
Laborde Earles Law Firm, LLC
203 Energy Pkwy, Bldg. B
Lafayette, LA 70508
(337) 261-2617
COUNSEL FOR PLAINTIFF-APPELLANT:
    Vernon Martin

**PICKETT, Judge.**

Vernon Martin appeals the judgment of the trial court dismissing his claim for injuries arising from an incident in which he tripped after stepping into a hole on property owned and maintained by the City of Crowley (Crowley).

## FACTS

On June 12, 2015, after leaving Gremillion's Drugstore in Crowley, Louisiana, Mr. Martin walked to his truck parked on West Fourth Street when he tripped on a hole in a grassy area between the sidewalk and the street. Mr. Martin claimed to suffer injuries to his back and his knee as a result of the incident. He filed a Petition for Damages naming as defendants Crowley, H & H Electrical Service (H & H), and H & H's insurer, Republic Underwriters Insurance (Republic). Mr. Martin alleged that Crowley was the owner of the grass strip where Mr. Martin tripped, and it may have created the hole over which he tripped. H & H had installed a utility pole for the International Rice Festival, and Mr. Martin alleged that the hole he tripped over may have been created by H & H. In a First Supplemental and Amending Petition, Mr. Martin added the International Rice Festival as a defendant, alleging that it may have created the hole.

H & H and Republic filed a Motion for Summary Judgment alleging there was no evidence that H & H created the hole. Mr. Martin did not contest the motion, and a judgment dismissing H & H and Republic was issued. Likewise, the International Rice Festival filed a Motion for Summary Judgment, which was unopposed by Mr. Martin. Thus, a judgment dismissing the claim against the International Rice Festival was executed. The action against Crowley proceeded to trial.

On May 7, 2018, a trial on the merits was convened. At the conclusion of Mr. Martin's case-in-chief, Crowley moved for a directed verdict. The trial court

denied the motion.  Crowley rested its case without presenting any evidence.  The trial court then ruled in open court that Mr. Martin failed to prove that the hole in question presented an unreasonable risk of harm.  Further, the trial court found that Mr. Martin failed to prove that Crowley had actual or constructive notice of the hole.  The trial court dismissed Mr. Martin's claims against Crowley in a judgment dated May 17, 2018.  Mr. Martin perfected this appeal.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Martin asserts two assignments of error:

1. The District Court erred in ruling that the hole at issue did not present an unreasonable risk of harm in light of evidence that Defendant had a reasonable expectation that pedestrians would be walking in the area where the hole was located; that the hole was several inches deep and wide, and partially obstructed by grass making it difficult for pedestrians to see from a reasonable distance; and where Defendant would not have had to incur substantial additional costs to inspect the grass strip at issue given that its already employee [sic] performed maintenance in the area on a regular basis.

2. The District Court erred in ruling that Defendant did not have actual or constructive knowledge of the hole at issue in light of evidence that Defendant's employees and representatives admitted to prior knowledge of a hole in the grass strip at issue, and admitted that by virtue of regular maintenance performed on the grass strip, they were in a position to observe and repair the hole prior to Plaintiff's injury.

## DISCUSSION

As a public entity, Crowley's liability for a defective condition in its care or control is governed by La.R.S. 9:2800, which states:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon

2

liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

D. Constructive notice shall mean the existence of facts which infer actual knowledge.

E. A public entity that responds to or makes an examination or inspection of any public site or area in response to reports or complaints of a defective condition on property of which the entity has no ownership or control and that takes steps to forewarn or alert the public of such defective condition, such as erecting barricades or warning devices in or adjacent to an area, does not thereby gain custody, control, or garde of the area or assume a duty to prevent personal injury, wrongful death, property damage, or other loss as to render the public entity liable unless it is shown that the entity failed to notify the public entity which does have care and custody of the property of the defect within a reasonable length of time.

F. A violation of the rules and regulations promulgated by a public entity is not negligence per se.

G. (1) "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:384(15), and their commissioners and other officers and employees and sewerage and water boards and their employees, servants, agents, or subcontractors.

(2) "Public site or area" means any publicly owned or common thing, or any privately owned property over which the public's access is not prohibited, limited, or restricted in some manner including those areas of unrestricted access such as streets, sidewalks, parks, or public squares.

In *Chambers v. Village of Moreauville*, 11-898, p. 5 (La. 1/24/12), 85 So.3d 593, 597, the supreme court explained the plaintiff's burden of proof in a claim governed by La.R.S. 9:2800:

Under La. R.S. 9:2800, in order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity

had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. *Lasyone v. Kansas City Southern R.R.*, 00-2628 (La.4/3/01), 786 So.2d 682, 690; *Dupree v. City of New Orleans*, 1999-3651 (La.8/31/00), 765 So.2d 1002, 1008.

Crowley admitted that the grass strip where Mr. Martin tripped was owned by the city at the time of this incident. We must therefore consider first whether the trial court erred in finding that the hole Mr. Martin tripped over constituted an unreasonable risk of harm. The courts have long held that whether a defect presents an unreasonable risk of harm must be determined on the particular facts of each case. *See Hunter v. Dep't of Transp. & Dev.*, 620 So.2d 1149 (La.1993). The trial court's determination in this regard is factual in nature, and we evaluate the findings of the trier of fact under the manifest error or clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). To determine that the trial court's factual findings are manifestly erroneous, we must review the record in its entirety and determine that no reasonable basis exists to support the finding and that the record shows the fact finder is clearly wrong. *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

In *Chambers*, 85 So.3d at 597-8, the supreme court explained how courts determine if a condition is unreasonably dangerous:

> Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. *Pryor v. Iberia Parish School Bd.*, 10-1683 (La.3/15/11), 60 So.3d 594, 596 (citing *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La.3/4/98), 708 So.2d 362, 365; *Boyle v. Board of Sup'rs, Louisiana State University*, 96-1158 (La.1/14/97), 685 So.2d 1080, 1083). This Court has applied the risk-utility balancing test to determine whether a defect in a sidewalk creates an unreasonable risk of harm, and determined there is no fixed rule in determining whether a defect in a sidewalk is unreasonably dangerous. *Boyle, supra* at 1082 (citing *White v. City of Alexandria*, 216 La. 308, 43 So.2d 618, 620 (1949)). Instead, the facts and surrounding circumstances of each case control. *Id.*

4

The risk-utility balancing test considered four factors: (1) the utility of the allegedly defective condition; (2) the likelihood and magnitude of the harm, including whether the condition is obvious and apparent; (3) the cost of preventing the harm; and (4) the social utility or dangerousness of the activities of the plaintiff. *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So.3d 175.

Here, the hole at issue measured approximately five inches deep and three to four inches wide, according to Mr. Martin. Clearly, this hole is not useful. Further, the hole was obscured by grass, even in the pictures presented to the court, which were taken after Mr. Martin stepped into the hole, so it was not an obvious defect. The trial court found, though, that the cost to Crowley of finding holes in all the grassy areas maintained by the city was very high. The Mayor of Crowley, Gregory Jones, testified it would take a three-man crew to inspect grassy areas for holes along the eighty miles of roadway in Crowley. As for the social utility, the trial court found that Mr. Martin was walking through this grass strip when the area was immediately adjacent to a sidewalk.

Mr. Martin argues that a beautification program initiated by Crowley to encourage pedestrian traffic should weigh in favor of finding this hole of unknown origin that had been present for an unknown amount of time constituted an unreasonable risk of harm. While Mayor Jones did testify that the revitalization of downtown was meant to encourage pedestrian traffic, the plan included sidewalks for the purpose of walking right up to the doors of local businesses.

We find that the trial court properly weighed the evidence and applied the correct law. Balancing the factors, we cannot say the trial court committed manifest error in finding that the hole did not constitute an unreasonable risk of harm.

5

In his second assignment of error, Mr. Martin argues that the trial court erred in finding that Crowley did not have actual or constructive notice of the hole. At trial, Mr. Martin argued that Crowley had actual notice of the hole. He claimed that when he called the mayor immediately after tripping, the mayor indicated that he knew about the hole. Mayor Jones specifically refuted that testimony. Mr. Martin also claimed Mrs. Rosenbaum, an owner of Gremillion Drugstore, told him immediately after the incident that they had complained to Crowley about a hole. But even in his testimony, Mr. Martin said she referred to the pole set by H & H, which is not in the same location as the hole in which he tripped. Mrs. Rosenbaum was not called to testify, but Jeanne Robicheaux, a member of the family that owns the Gremillion's Drugstore, did testify. She was not at the store on the day of Mr. Martin's incident, but she testified she was not aware of an open hole in the grassy area and had heard no complaints about a hole. She did testify that someone at the store complained to the city about the utility pole, but not about any hole. "Where there is conflict in the testimony presented at trial, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review." *Poole v. Poole*, 08-1325, p. 5 (La.App. 3 Cir. 4/1/09), 7 So.3d 806, 810 (citing *Rosell*, 549 So.2d 840).

On appeal, Mr. Martin claims the evidence he presented was sufficient for the trial court to determine that Crowley had constructive notice of the hole. As noted above, the statute defines constructive notice as "the existence of facts which infer actual knowledge." La.R.S. 9:2800(D). The trial court, in finding there was no constructive notice, specifically stated that it was impressed by the testimony of Jonathan Cormier. Mr. Cormier's job included the responsibility for maintaining the strip of grass at issue in this case. He testified that he mows the hole every one to two weeks in the summer, including in June when this incident occurred. He

testified that he never saw the hole Mr. Martin stepped in before the accident. He testified that when he trims the edges of the area with a weedeater, he walks right in the center of the grassy strip. He testified that he would have walked right over where the hole was located when he maintained the area. If he had seen the hole, he would have filled it in with sand. Mayor Jones confirmed that Mr. Cormier has the authority to repair such a hole without any paperwork. Mayor Jones also commented that Mr. Cormier is very conscientious about his job.

Mr. Martin argues that Mr. Cormier failed to remember the pole that was in the area, and therefore his testimony is unreliable. Given the wide latitude afforded the trial court in making credibility determinations, we find no merit to this argument.

Mr. Martin also argues the trial court committed an error of law in not considering circumstantial evidence to find constructive notice. The trial court specifically found that there was no evidence presented about how long the hole was there or how the hole came to be. However, Mr. Martin failed to introduce any circumstantial evidence to support his theory that Crowley should be charged with constructive notice. He seems to suggest that because he could not prove how the hole was created or how long the hole had been there, and the grass grew up over the hole, the hole must have been there when Mr. Cormier last maintained the strip of grass. Therefore, he argues, Crowley should be charged with constructive notice of the hole because Mr. Cormier failed to notice what should have been noticed in the exercise of reasonable care. We find no merit to this argument.

While it is true that courts have adopted this test in interpreting the notice requirements of La.R.S. 9:2800.6, that statute includes a completely different definition of constructive notice:

(C)(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

This court has held that in the context of La.R.S. 9:2800, "A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by the exercise of ordinary care . . . the municipal authority must have known of its existence, and . . . had reasonable opportunity to guard the public from injury by remedy of the defect." *Ambrose v. City of New Iberia*, 08-1197, p. 2 (La.App. 3 Cir. 4/1/09), 11 So.3d 34, 37. The trial court did not find that just because the grass had grown over the hole, it had obviously been there long enough for the city to be aware of its existence. Given the totality of the evidence, we find no manifest error in that finding.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Vernon Martin.

**AFFIRMED.**

NUMBER 18-737

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERNON MARTIN

VERSUS

CITY OF CROWLEY

SAVOIE, J., concurring.

I agree with the majority that an affirmation is appropriate in this case. I would note a procedural issue, however. At the conclusion of Plaintiff's case-in-chief, the City of Crowley moved for a directed verdict. This matter was tried as a bench trial. The proper procedure was for the City of Crowley to move for an involuntary dismissal, not a directed verdict. *See* La.Code Civ.P. art. 1672. A motion for directed verdict is used in jury trials. *See* La.Code Civ.P. art. 1810. Nonetheless, the improper styling of the motion is harmless error.

I would further note that it is unclear whether the motion was actually denied. When the trial judge was asked in open court about whether her decision was based on a directed verdict or the judgment of the case as a whole, she replied, "I mean, I actually don't think a directed verdict was appropriate. The evidence was all in. And so I'm - - you know, I'm [going to] make a ruling." A judgment on the motion was not put into writing. On a motion for involuntary dismissal, the trial court is allowed to decline to rule until all of the evidence is in. The trial court can either rule on the motion for involuntary dismissal or it "may decline to render any judgment until the close of all the evidence." La.Code Civ.P. art. 1672. It is my opinion, based on the record, that the trial court declined to rule until all of the evidence was in, rather than deny the motion.